**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Parvez SHARIF, Defendant-Appellee.**

No. 86–1039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1987.

Decided May 21, 1987.

Karen Skrivseth, Washington, D.C., for plaintiff-appellant.

Thomas F. Pitaro, Las Vegas, Nev., for defendant-appellee.

Before SCHROEDER, WIGGINS and THOMPSON, Circuit Judges.

SCHROEDER, Circuit Judge:

The United States appeals from the district court's order granting defendant's Fed.R.Crim.P. 29(c) motion to acquit after the jury had returned a guilty verdict. Defendant Parvez Sharif was charged with one count of conspiracy to distribute or possess narcotics, 21 U.S.C. § 841(a)(1), and three counts of using a telephone to facilitate that conspiracy, 21 U.S.C. § 843(b). The jury found the defendant guilty on the three facilitation counts but deadlocked on the conspiracy count. The court consequently granted a mistrial on the conspiracy count and then granted the defendant's Rule 29(c) motion to acquit for insufficiency of the evidence on the facilitation counts.

In granting the motion, the court decided that there had been insufficient evidence to support a conviction on the underlying conspiracy count, and that accordingly, in the absence of an underlying conspiracy, the defendant could not be guilty of facilitating the conspiracy. The government does not question the district court's logic, only its conclusion that the evidence to support the conspiracy charge was insufficient.

The defendant challenges the government's right to appeal from a judgment of acquittal. It is that threshold jurisdictional issue to which we first turn.

Title 18 U.S.C. § 3731 authorizes government appeals in criminal cases except when the double jeopardy clause would bar further prosecution. In *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), the Supreme Court held that where the jury fails to reach a verdict and the district court grants a Rule 29(c) motion to acquit, the government may not appeal the court's ruling. Since the result of a successful appeal in such a case would be a retrial, and such a retrial would run afoul of the double jeopardy clause, a government appeal is not allowed. *Id.* at 569–71, 97 S.Ct. at 1354. The Court treated an acquittal after a jury mistrial under Rule 29(c) as precluding an appeal no less than an acquittal entered on the trial court's own motion or on the defendant's motion prior to a jury verdict under Rule 29(a) and (b). *Id.* at 575, 97 S.Ct. at 1356.

A different situation is presented where the jury returns a guilty verdict and the district court enters a judgment of acquittal. In that situation, a successful appeal by the government would result merely in a reinstatement of the original verdict, not a new trial. In such a case, a government appeal is permissible. *See United States v. Wilson*, 420 U.S. 332, 344–45, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975); *see also United States v. Wright*, 742 F.2d 1215, 1224 (9th Cir.1984); *United States v. Dreitzler*, 577 F.2d 539, 544 (9th Cir.1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979).

In this case the reason that the district court set aside the jury verdict of guilty on the facilitation counts was the insufficiency of the evidence on the conspiracy count. The defendant therefore argues that this case should be governed by *Martin Linen Supply*. This case differs fundamentally from *Martin Linen Supply*, however, in that here the government is not appealing from the judgment of acquittal based upon a hung jury, but from a judgment of acquittal on counts on which the jury rendered verdicts of guilty. As we have seen, the question of appealability turns upon whether resolution of the issues raised in the government's appeal in favor of the government would lead to a new trial, as in *Martin Linen Supply*, or whether, as in *Wilson*, the appeal would result in reinstatement of a guilty verdict and no retrial. Here, the judgment of acquittal being appealed is one entered after a guilty verdict and not after a hung jury, and *Wilson* therefore must control. No retrial would result upon reversal. We hold that the government may appeal.

We next turn to the more difficult question of sufficiency of the evidence underlying the conspiracy count.

The indictment charged Sharif with conspiring with Najeeb Ur Rahman to distribute heroin, or to possess heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). The conspiracy count alleged four phone calls, beginning in March 1984, in furtherance of the conspiracy. The government's evidence at trial consisted of the recordings of eleven intercepted telephone conversations. Three of the calls formed the basis for the counts of unlawful use of a communication facility. The government proceeded on the theory that an agreement existed between the two men at the time the first phone call was intercepted. Since the conversations had been conducted in the Pakistani language of Urdu, and involved use of "code," the obfuscatory argot of drug traffickers, the government also relied on a translator and a "code" expert.

We review the grant of a motion for judgment of acquittal under the same standard that the district court used in considering the motion. *See, e.g., United States v. Johnson,* 804 F.2d 1078, 1083 (9th Cir. 1986). We must view the evidence in the light most favorable to the government and determine whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see also United States v. Clevenger,* 733 F.2d 1356, 1358 (9th Cir.1984).

Viewed in that manner, the evidence showed that Sharif was acting as an intermediary for the seller in a contemplated transaction. Sharif's alleged co-conspirator, Rahman, was acting as an intermediary for buyers who intended to distribute heroin. Both men understood from the beginning that Sharif had access to the heroin and would receive a commission from the sale. The parties discussed delivery of a sample to Rahman and details of the final delivery of the heroin. Price was negotiated at some length. Viewing the evidence in the light most favorable to the government, the jury could have determined that the evidence showed that the two alleged conspirators had an agreement to transact a sale of heroin subject to the agreement of their principals on price. Apparently, the deal was never consummated because Sharif's price was too high for the people Rahman represented.

Among the essential elements of a conspiracy is an agreement to accomplish an illegal objective. The agreement necessarily looks to a future objective. One commentator has observed that "[a]s projections into the future, conspiratorial intentions, and the objects they define, are by nature conditional." Note, *Conditional Objectives of Conspiracies,* 94 Yale L.J. 895, 899 (1985). In recognition of the indeterminacy of such forward-looking criminal agreements, we have stated that "inferences of the existence of such an agreement may be drawn 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" *United States v. Melchor-Lopez,* 627 F.2d 886, 890 (9th Cir.1980) (quoting *United States v. Monroe,* 552 F.2d 860, 862–63 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977)). The evidence of Sharif and Rahman's concerted dealings satisfies that test.

The district court granted the motion to acquit, however, because it concluded that under the law of this circuit there was an insufficient showing of an agreement between Sharif and Rahman to distribute heroin in that there was never any agreement by their principals on the price and quantity terms of the deal. The district court relied upon *Melchor-Lopez,* in which we reversed convictions for conspiracy because of insufficient evidence of agreement. We held that the government had shown no more than a "conspiracy to attempt to arrange a purchase," 627 F.2d at 892, rather than an agreement to carry out an illegal act. The key failing in the government's case in *Melchor-Lopez* was the fact that the defendants themselves

refused the terms offered by the person arranging the transaction. *Id.* at 888–89.

The defendant extrapolates from this case a general rule that as a matter of law there can be no conspiracy without proof of an agreement not merely to carry out an illegal objective but also on such terms as price, quantity, and time, place, and manner of delivery. Our decisions, however, do not create such a requirement, for we have held proof of conspiracy sufficient where the actual buyer and seller never agreed to such terms. *See United States v. Kiriki,* 756 F.2d 1449 (9th Cir.1985). We have recognized the existence of a conspiracy between intermediaries where the principal was a government agent and the contemplated transaction never transpired. *See United States v. Sangmeister,* 685 F.2d 1124 (9th Cir.1982); *see also United States v. Lee,* 694 F.2d 649, 650–52 (11th Cir.) (conviction of intermediary for conspiracy to import cocaine upheld where buyer was government agent and defendant agreed to facilitate deal that "fell through"), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983). In this light, *Melchor-Lopez* must be examined with some care.

In *Melchor-Lopez* we described the cast of characters as follows: "The key figure in the alleged conspiracy was Salvatore Rina, an indicted co-conspirator, who sought to act as an intermediary in bringing together appellant Melchor-Lopez, as supplier of heroin and cocaine, and appellant, Kommatas, as purchaser." 627 F.2d at 888. The defendants would have been the principals in a narcotics transaction that the third party, Rina, tried to intermediate. The government sought to prove that Melchor-Lopez agreed with Rina to sell the heroin and that Kommatas agreed with Rina to purchase as a distributor. It failed to prove this, for Melchor-Lopez refused to accept Rina's conditions, and Rina's negotiations with Kommatas never went beyond a preliminary stage. Neither defendant was shown to have agreed with a co-conspirator to carry out any illegal act. The government's proof failed as to each defendant because each defendant, who was to be a principal in the purchase, refused to enter into it. As this court later

observed, a critical consideration in *Melchor-Lopez* was that both defendants themselves raised objections or conditions to the specific drug transactions. *See United States v. Escalante,* 637 F.2d 1197, 1200 n. 1 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980); *United States v. Lester,* 749 F.2d 1288, 1297 n. 8 (9th Cir.1984).

In this case, in contrast, the co-conspirators were intermediaries who agreed to the contemplated criminal objective. The transaction ultimately was foiled by the objections of others. *Melchor-Lopez* therefore is not controlling.

The facts in this case more closely resemble those in *Kiriki.* There the two alleged co-conspirators agreed to a purchase of goods for unlawful export to Japan, but were unable to come to terms with the seller of the goods. Thus the transaction never occurred. We viewed the issue as whether the two alleged co-conspirators were shown to have agreed to accomplish the illegal objective, even though the method of accomplishing the objective was frustrated by the lack of a specific agreement with the supplier. *Id.* at 1454. We appropriately distinguished *Melchor-Lopez* by noting that Kiriki and his co-defendant were working together to elicit the third party's assistance. *Id.* at 1455.

Here, as in both *Kiriki* and *Melchor-Lopez,* the issue is the sufficiency of the evidence of an agreement between co-conspirators. The focus of our judicial inquiry must be on the relationship between the co-conspirators and whether they were acting in concert. We should not focus upon the actions of others. In *Melchor-Lopez,* we therefore held the evidence insufficient where the defendants themselves refused to agree to the transaction. In *Kiriki,* we held the evidence sufficient where the defendants and the co-conspirator had reached agreement on the criminal objective but the transaction was thwarted by unwillingness or inability of others to come to terms.

In this case the evidence was sufficient for a rational factfinder to conclude that

the co-conspirators themselves agreed to undertake a criminal objective, namely the distribution of heroin. Their principals' failure to agree on price might well preclude the principals from being convicted as co-conspirators, as in *Melchor-Lopez*, but it does not render the evidence insufficient as to the defendant. We therefore conclude that the district court erred in holding that the evidence of conspiracy between the intermediaries was insufficient because of the failure of their principals to agree to specific terms.

The judgment of the district court is reversed and the matter remanded with instructions to enter a judgment of conviction on the jury's verdict.