UNITED STATES of America,
Plaintiff–Appellee,

v.

Scott Robin ROSTON, Defendant–
Appellant.

No. 89–50531.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1992.

Decided Feb. 26, 1993.

Mary M. Gibbons, North Hollywood, CA, for defendant-appellant.

Mark D. Larsen, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before CANBY, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

On the last night of her honeymoon aboard the cruise ship Stardancer, Karen Roston went overboard and died. Her husband of just a few days, the appellant Scott Robin Roston, was accused of killing her. He was indicted for second-degree murder and convicted. On appeal he contends that the evidence is insufficient to support his conviction, and that the district court erred by (1) refusing to give the jury a voluntary manslaughter instruction; (2) admitting into evidence a statement Roston made to the ship's doctor when the doctor questioned him concerning the incident; (3) denying his pretrial request for substitution of counsel; and (4) departing upward in imposing his sentence.

We have jurisdiction under 28 U.S.C. § 1291. We affirm Roston's conviction, but vacate his sentence and remand for resentencing.

## FACTS

Several people noticed tension between Roston and the decedent during the cruise. A passenger who shared a table with them testified that Roston was angry with his new wife because she ate sweets and didn't know what eating utensils to use from the "complex" settings of shipboard silverware. Roston was seen fighting with a woman on deck about 45 minutes to one hour before he reported that his wife had gone overboard.

Roston told inconsistent stories about how his wife went overboard. He first said that she was blown overboard. Later, he said that she fell overboard and that he tried to grab her but could not. She was 5'3" tall. The railing over which she reportedly fell was 3'6" high.

The prosecution presented evidence which tended to show that Roston strangled his wife into unconsciousness and then threw her overboard. Her body was kept afloat by air trapped in her clothing. Had she attempted to swim after entering the water, the air would have been forced out of her clothes. This evidence suggested she was unconscious when she hit the water. She died from drowning.

The decedent's neck and eyes showed signs of hemorrhage which the prosecution argued indicated manual strangulation. The decedent's neck bones also showed warping, indicative of strangulation. The decedent's clothing contained material from the jogging track on deck which the prosecution argued meant that she had been pressed to the deck with a great deal of force. In addition, parts of her earrings were found on deck along with strands of her hair. The strands of hair showed signs of having been yanked from her head.

Roston's face was severely scratched at the time he reported that his wife had gone overboard. He said that he had hit his head on a gangway control box, but no blood, hair or other marks were found on the box. Photographs of the box showed that it had no sharp protrusions that could have caused the triangular gouges and a four-inch scratch which Roston had on his face.

After Roston reported that the decedent had gone overboard, he was questioned at length by Dr. Young, the ship's doctor. In addition to being a medical doctor, Dr. Young was deputized as a law officer in Hawaii. The questioning took place in the captain's cabin, with the door open. During the questioning, other people occasionally entered and left. With Roston's permission, the interrogation was audiotaped. When the questioning ended, Roston was put in an unoccupied cabin under guard. He was never advised of his *Miranda* rights.

Roston did not testify at his trial. The only evidence he introduced were records which showed that there were two Israeli nationals aboard the ship when his wife went overboard. He argued that these Israelis killed her and threw her overboard. He was convicted of second-degree murder and sentenced to life in prison. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

■ When a defendant has moved under Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal on the ground that the evidence is insufficient to support the verdict, we review the record to determine "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *United States v. Sharif,* 817 F.2d 1375, 1377 (9th Cir.1987) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in *Jackson*). If no Rule 29(a) motion was made in the trial court, we review under a more rigorous standard of review for plain error to prevent a "miscarriage of justice." *United States v. Curtis,* 568 F.2d 643, 647 (9th Cir.1978).

Here, Roston did not move for a judgment of acquittal under Rule 29(a), but he did move for a judgment of acquittal under Rule 29(c) after the jury had returned its verdict. Roston argues that we should apply the same standard of review we would apply if his motion had been made under Rule 29(a) before the case was submitted to

the jury. The government argues we should apply the plain error standard. We do not resolve this dispute because even under the more lenient standard of review the evidence is sufficient to support the verdict.

■ In arguing the evidence is insufficient to support the verdict, Roston contends no rational juror could have found beyond a reasonable doubt that he killed his wife with malice.[1] Malice "embraces the state of mind with which one intentionally commits a wrongful act without legal justification or excuse. It may be inferred from circumstances which show 'a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences.'" *United States v. Boise*, 916 F.2d 497, 500 (9th Cir.1990), *cert. denied*, ─ U.S. ─, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) (quoting *United States v. Celestine*, 510 F.2d 457, 459 (9th Cir. 1975)).

■ Here, there was evidence of a substantial struggle. Parts of the decedent's earrings and remnants of her hair were found on the deck 11½ feet from the railing where she went overboard. The injury to her forehead was consistent with the prosecution's theory that her head had been smashed against the deck of the ship. The hemorrhaging and bone warping in her neck indicated she had been strangled. The cumulative effect of this evidence suggests that the decedent's assailant, over the course of a fairly prolonged struggle, intended to kill her. Moreover, the killing process continued beyond the struggle and strangling. The decedent was not dead, but only unconscious when she was pushed or thrown into the ocean. At that time the ship was twenty miles out to sea.

On the basis of this evidence, a rational jury could have found beyond a reasonable doubt that the decedent was killed with malice.

Roston argues that even if all of the foregoing is true, a gap in the prosecution's

case still exists. He contends the prosecution was required to prove beyond a reasonable doubt that the killing was not committed in the heat of passion. He argues that without such proof the prosecution failed to establish that he killed his wife with malice. We reject this argument. The prosecution is required to negate a killing in the heat of passion only if that issue is "properly presented in a homicide case." *Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975). As hereafter explained, we conclude there was insufficient evidence of provocation for the killing, and as a result the heat of passion issue was not properly presented in this case.

## VOLUNTARY MANSLAUGHTER INSTRUCTION

The district court refused Roston's request for a jury instruction on the lesser-included offense of voluntary manslaughter. Roston contends we are required to review de novo this ruling by the district court. We disagree. When a district court refuses a defendant's request for an instruction on a lesser-included offense, we review that ruling for abuse of discretion. *United States v. Pedroni*, 958 F.2d 262, 268 (9th Cir.1992); *United States v. Torres*, 937 F.2d 1469, 1476 (9th Cir.1991), *cert. denied*, ─ U.S. ─, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992).

A defendant is entitled to an instruction on a lesser-included offense if "(1) the lesser offense is within the offense charged, and (2) based on the evidence presented at trial, 'a rational jury could find defendant guilty of the lesser offense but not the greater.'" *United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir.1987) (quoting *United States v. Brown*, 761 F.2d 1272, 1277 (9th Cir.1985)). Because voluntary manslaughter is a lesser-included offense of murder, we consider whether a rational jury could have convicted Roston of voluntary manslaughter without convicting him of second-degree murder.

1. At trial, Roston contended he did not kill his wife. On appeal, he limits his insufficiency-of-the-evidence argument to his contention that there was insufficient evidence of malice to support the verdict of second-degree murder.

On the difference between second-degree murder and voluntary manslaughter, we have previously said:

> "Voluntary manslaughter is a lesser included offense of murder." *United States v. Scafe*, 822 F.2d 928, 932 (10th Cir.1987); *see also United States v. Celestine*, 510 F.2d 457, 460 (9th Cir.1975). The absence of malice distinguishes manslaughter from murder, *see* 18 U.S.C. §§ 1111(a), 1112(a), and the defendant's showing of a "heat of passion" is said to negate the presence of malice. *Scafe*, 822 F.2d at 932; *United States v. Collins*, 690 F.2d 431, 437 (5th Cir.1982), *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 801 (1983). The standard, however, is not a subjective one. "While the crime of manslaughter is in some sense 'irrational' by definition, in that it arises out of a person's passions, the provocation must be such as would arouse a reasonable and ordinary person to kill someone." *Collins*, 690 F.2d at 437; *see also United States v. Eagle Elk*, 658 F.2d 644, 649 (8th Cir.1981); 2 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 41.14 (1977).

*Wagner*, 834 F.2d at 1487.

The question then becomes whether there was sufficient evidence of provocation to arouse a reasonable and ordinary person to kill the decedent. Roston argues there was. He points to the following evidence: (1) disagreements between him and his wife over her eating sweets; (2) tension between them because she did not know how to use the "complex" silverware settings aboard ship; and (3) the inference that there was a physical altercation between Roston and his wife shortly before her death.

■ The first and second proffered grounds for adequate provocation are self-evidently insufficient. Neither could possibly provoke a reasonable and ordinary person to kill. The third ground is somewhat more plausible because in some circumstances a physical altercation between two people can constitute sufficient provocation to reduce second-degree murder to voluntary manslaughter. *See, e.g., Stevenson v. United States*, 162 U.S. 313, 320, 16 S.Ct. 839, 841, 40 L.Ed. 980 (1896); *Guam v. Fejeran*, 687 F.2d 302, 306 (9th Cir.1982), *cert. denied*, 460 U.S. 1045, 103 S.Ct. 1444, 75 L.Ed.2d 800 (1983). But the provocation must be sufficient to "arouse a reasonable and ordinary person to kill someone." *Wagner*, 834 F.2d at 1487.

■ Here there was evidence of a prolonged struggle. When Roston reported his wife had gone overboard, his face was severely scratched, and the evidence suggests it was she who scratched him. But there was no evidence that the scratching of Roston's face provoked the altercation. The most that can be drawn from this evidence is that there was a physical altercation and the decedent scratched Roston's face.

This is insufficient to satisfy the adequate provocation standard we articulated in *Wagner*. Here, the trial court heard the evidence and decided not to give the voluntary manslaughter instruction. In so doing, it exercised its discretion. It is given this discretion because: " 'The trial court is in a better position to determine whether there is sufficient evidence to give a lesser-included offense instruction,' and its determination 'will not be disturbed on appeal without an abuse of discretion.' " *Id.* (quoting *United States v. Steel*, 759 F.2d 706, 711 (9th Cir.1985)).

The abuse of discretion standard is highly deferential to the trial court. Under this standard of review, "we cannot simply substitute our judgment for that of the district court, but must be left with the definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *United States v. BNS Inc.*, 858 F.2d 456, 464 (9th Cir.1988). Applying this standard, we cannot say that the district court committed a clear error of judgment in refusing to give a voluntary manslaughter instruction.

## FAILURE TO GIVE MIRANDA WARNING

Roston argues that because he was not given a *Miranda* warning, the district

court erred in admitting statements he made to Dr. Young when Dr. Young interrogated him aboard ship. We reject this argument.

■ The requirement of a *Miranda* warning may apply to questioning by persons who are not law enforcement officers. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (court appointed psychiatrist must provide warning and get waiver before examining a defendant if information is to be used against him). However, a *Miranda* warning need not be given by everyone with whom a defendant may choose to talk. The question is whether the person with whom the defendant speaks is involved "on behalf of the state...." *Jones v. Cardwell*, 686 F.2d 754, 756 (9th Cir.1982).

■ In *United States v. Pace*, 833 F.2d 1307, 1313 (9th Cir.1987), *cert. denied*, 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988), we concluded that the defendant who had confessed to his cellmate was not entitled to a *Miranda* warning because "[t]here was no pre-existing agreement between [the cellmate] and the ... police ..., [the cellmate] acted on his own initiative in obtaining [the defendant's] confession, and there was no *quid pro quo* underlying [the cellmate's] relation with the government." *Id.*

In the present case, the doctor who questioned Roston aboard ship was asked to do so by the captain. Both the captain and the doctor acted on their own initiative without any government involvement. The fact that the doctor was also a reserve police officer is mere fortuity. No *Miranda* warning was required.

## REFUSAL TO APPOINT NEW COUNSEL

We review for abuse of discretion a district court's denial of a motion to substitute new counsel. *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1380 (9th Cir.

1991); *United States v. Wadsworth*, 830 F.2d 1500, 1506 (9th Cir.1987).

In deciding whether a district court abused its discretion in denying a request for substitution of counsel, we consider three factors: "(1) timeliness of the motion; (2) adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Gonzalez*, 800 F.2d 895, 898 (9th Cir.1986).[2] None of these factors favors Roston.

■ First, Roston's motion was not timely. His case had been pending for more than a year, he had been through three attorneys, and he was asking for a fourth. He waited until two weeks before the scheduled trial date to present his motion. Some of the government's witnesses worked on cruise ships and were under subpoena to appear at the scheduled trial date. At least two of them had been required to turn down jobs while waiting for the trial to begin.

Second, the court's inquiry was extensive. The court held an *in camera* session during which it gave Roston and his attorney ample opportunity to explain the need for substituted counsel.

■ Finally, any breakdown in communication between Roston and his current counsel was entirely Roston's fault. He said he had important information for his attorney, but refused to tell him what that information was. He said he didn't trust his current counsel. The reason he didn't trust him was allegedly because he, Roston, had been mistreated by his previous attorneys. This showing was insufficient. Roston's relationships with his previous attorneys had no bearing on his relationship with his current attorney. Moreover, any breakdown in communication between Roston and his current attorney was com-

---

**2.** Roston argues that when a defendant wishes to substitute retained counsel for appointed counsel, as he did in this case, only timeliness need be considered under our decision in *United States v. Torres–Rodriguez*, 930 F.2d 1375,

1380 n. 2 (9th Cir.1991). This is true only "[w]hen there is no threat of a delay in the proceedings...." *Id.* Here Roston was asking for a third continuance, two weeks before his scheduled trial. The threat of delay was clear.

pletely controlled by Roston. It was he who refused to communicate with his attorney. He then attempted to use this refusal to communicate to get a new lawyer, without providing any reasonable explanation to support his request. The district court did not err in declining to appoint new counsel.

## SENTENCING DEPARTURE

Under the Sentencing Guidelines, Roston's second-degree murder conviction resulted in a base offense level of 33. U.S.S.G. § 2A1.2 (1989). He had no prior arrests or convictions; his criminal history category was 1. This combination produced a sentencing range of 135 months to 168 months (14 years). The district court sentenced Roston to life imprisonment. In imposing this sentence, the court departed upward 10 levels. It did so relying on U.S.S.G. § 5K2.1 (1989) (death resulting from criminal conduct), and U.S.S.G. § 5K2.8 (1989) (conduct "unusually heinous, cruel, brutal, or degrading to the victim").

We employ a three-step process in reviewing a district court's sentencing departure under the guidelines. *United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir.1991) (en banc). We consider (1) whether the district court had authority to depart, a question which we review de novo; (2) whether the district court was clearly erroneous in finding any of the facts on which it relied to depart; and (3) whether the degree of departure was reasonable. *Id.* at 746–47. *Lira–Barraza* applies retroactively to Roston's sentence. *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1329 (9th Cir.1992).

■ We consider first whether the district court had authority to depart under U.S.S.G. § 5K2.1. The first sentence of this section provides: "If death resulted, the court may increase the sentence above the authorized guideline range." The district court acknowledged it would not be proper to depart simply because the decedent died as a result of Roston's acts. The base offense level for Roston's crime of conviction, second-degree murder, included

this circumstance. The court focused instead on the first part of the last sentence of section 5K2.1 which provides: "For example, a substantial increase may be appropriate if the death was intended...." U.S.S.G. § 5K2.1 (1989). The court stated: "There is no question in the court's mind this death was intended." On the basis of this finding, the court departed upward. It erred in so doing.

Roston was convicted of second-degree murder. One of the elements of this crime is malice. *See* 18 U.S.C. § 1111(a). As we have previously stated, malice "embraces the state of mind with which one *intentionally* commits a wrongful act without legal justification or excuse." *Boise*, 916 F.2d at 500 (emphasis added). Thus, the circumstance of an intentional killing must have been taken into consideration by the Sentencing Commission in formulating the guideline range for second-degree murder. Accordingly, the fact that Roston intended to kill his wife, standing alone, could not be used to depart upward from the base offense level for second-degree murder. *See* 18 U.S.C. § 3553(b).

■ With regard to the district court's reliance on U.S.S.G. § 5K2.8, an upward departure would be permissible based upon a finding that Roston's conduct in killing his wife was "unusually heinous, cruel, brutal, or degrading" to her. The district court found that:

> [Roston] cruelly killed his wife of nine days. For no reason that appears to this court, he saw fit to physically assault her, beat her, choke her into unconsciousness and throw her body into the sea over twenty miles from land in the dark of night off the coast of Mexico knowing, as he must have known, that she was certain to perish.

■ These findings are not clearly erroneous. On the basis of them, the district court had authority to depart upward under U.S.S.G. § 5K2.8. By departing upward ten levels, however, the district court imposed on Roston the penalty required for first-degree murder even though he was only convicted of second-degree murder.

The district court did not explain this rather extraordinary departure in terms of the structure, standards and policies of the guidelines as required by *Lira–Barraza,* 941 F.2d at 751. Nor did the court allocate the extent of its departure between sections 5K2.1 and 5K2.8. The court stated: "I'm not trying to say so many points for one reason for death departure or so many points for the other but I think I know a life imprisonment case when I see it and this is it." This explanation fails to satisfy the requirements of *Lira–Barraza.*[3]

### CONCLUSION

The evidence was sufficient to support Roston's conviction of second-degree murder. The district court did not err in refusing to give a voluntary manslaughter instruction, in admitting statements Roston made to the ship's doctor notwithstanding the failure to give him a *Miranda* warning, or in denying Roston's motion for substitution of counsel. The district court failed, however, to explain in terms of the structure, standards and policies of the Sentencing Guidelines why it departed upward ten levels in sentencing Roston, and his sentence must be vacated.

Conviction AFFIRMED. Sentence VACATED. Cause REMANDED to the district court for resentencing.

BOOCHEVER, Circuit Judge, concurring

While I agree with the opinion in this appeal, I write separately to express my view that the standard adopted by our circuit for provocation justifying a voluntary manslaughter instruction is impossibly high. The opinion correctly states the standard as requiring that the provocation must be such as would "arouse a reasonable and ordinary person to kill someone." I cannot envision such a provocation that would not constitute justification for the crime. "[A] reasonable person does not kill even when provoked...." *Model Penal Code* § 210.3 cmt. 5(a), at 56 (1980); *see* Stephen J. Morse, *Undiminished Confu-*

*sion in Diminished Capacity,* 75 J.Crim.L. & Criminology 1, 33 (1984) ("Reasonable people do not kill no matter how much they are provoked, and even enraged people generally retain the capacity to control homicidal or any other kind of aggressive or antisocial desires." (footnote omitted)).

The Model Criminal Jury Instructions for the Ninth Circuit set forth what appears to me to be a more appropriate standard: "Provocation, in order to be adequate, must be such as might naturally cause a reasonable person in the passion of the moment to lose self-control and act on impulse and without reflection." 9th Cir.Crim. Jury Instr. 8.24C (1992). This standard does not imply that reasonable people kill, but rather focuses on the degree of passion sufficient to reduce the actor's ability to control his actions. Similar standards have been adopted by other circuits. *See, e.g., United States v. Elk,* 658 F.2d 644, 649 (8th Cir. 1981) (provocation must be such " 'as would cause the ordinary reasonable person to act rashly and without deliberation and reflection, and from such passion, rather than from judgment' " (citation omitted)); *United States v. Alexander,* 471 F.2d 923, 946 (D.C.Cir.) (provocation "must be such as might naturally induce a reasonable man in the passion of the moment to lose self-control and commit the act on impulse and without reflection"), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). Even were we to apply the Model Instruction's standard, however, I would conclude that the trial court did not abuse its discretion in refusing to give the instruction, although I also believe it would not have been an abuse of discretion to have given it.

---

**3.** The sentence in this case was imposed before our *Lira–Barraza* decision. The district court, therefore, cannot be faulted for its failure to apply the *Lira–Barraza* analysis and analogize its departure to other parts of the guidelines.