996 F.2d 1229
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Maria RODRIGUEZ, Defendant-Appellant.
 No. 92-10474.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 16, 1993.
Decided June 18, 1993.
 
 Before GOODWIN, NORRIS and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jose Maria Rodriguez appeals his jury conviction and sentence under the Sentencing Guidelines for importation of marijuana and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(4), 841(a)(1) and 841(b)(1)(D). We affirm.
 
 I.
 
 3
 At approximately 8:30 p.m. on March 1, 1991, the van Rodriguez was driving entered the primary inspection area at the Port of Entry in Douglas, Arizona. Rodriguez presented U.S. Customs Inspector Bojorquez with his U.S. passport and, answering routine border patrol questions, explained that he was returning home from visiting family in Agua Prieta, Sonora. When a computer analysis of Rodriguez's passport matched the name and birthdate of an individual in the Treasury Enforcement Communications System, Inspector Bojorquez referred Rodriguez to a secondary inspection area. Meanwhile, additional computer analysis indicated that Rodriguez may be armed and dangerous.
 
 
 4
 Rodriguez was met by Inspectors Doherty and Holguin at the secondary inspection area. Aware that Rodriguez may be armed and dangerous, the inspectors asked Rodriguez out of the van with his hands away from his pocket. Rodriguez testified that one of the inspectors pulled or twisted his arm towards his back, and that he was then led to a search room where he was subjected to a pat down search. The inspectors found no weapons, but did find some items inside his jacket, including a plane ticket, Rodriguez's car permit and receipts for repair of the vehicle. When asked about these items, Rodriguez explained that he had been in a roll-over accident in the van ten days earlier and had left the vehicle for repairs in Mexico; he was now returning home with the repaired van. Rodriguez was then left alone in the search room.
 
 
 5
 Inspector Doherty testified at trial that he then examined the gas tank of Rodriguez's 1972 Dodge van. He noted that the tank was plastic, even though plastic gas tanks generally were not manufactured until the 1980s. Further, he noted that there was a fresh, sticky undercoating sprayed on the plastic tank, as well as the threads, bolts an nearby frame. When the inspector used a fiber optic scope to see inside the gas tank, he noticed what appeared to be rust. He thought it strange to find rust inside a plastic gas tank. After the fiber optic scope hit some sort of wall within the gas tank, the inspector took the van to the customs garage to remove the tank. Inside the gas tank, the inspectors found two pressurized metal containers, both containing a total of eleven bundles of a fresh, green leafy substance later confirmed to be 107 pounds of marijuana.
 
 
 6
 U.S. Customs Special Agent Harrison participated in the search of Rodriguez's gas tank. After a registration check confirmed that Rodriguez was the owner of the vehicle, Agent Harrison entered the search room where Rodriguez had been left approximately four hours earlier. Agent Harrison testified that he handed Rodriguez a written form advising him of his Miranda rights, and directed him to read the form out loud. When asked if he understood the form, Rodriguez replied that he did. Rodriguez signed the waiver form and agreed to answer the agent's questions.
 
 
 7
 Rodriguez was indicted and tried before a jury in October 1991. The jury could not come to a verdict, and the presiding judge declared a mistrial. Rodriguez was again tried in April of 1992, and this time was found guilty of both counts in the indictment. The district court sentenced Rodriguez to 33 months imprisonment to be followed by 36 months of supervised release. Rodriguez filed a timely notice of appeal.
 
 II.
 
 8
 Rodriguez argues that the district court erred by not suppressing the statements he made to the customs inspectors at the border. He argues first that he should have been read his Miranda rights when he was initially questioned by Inspectors Doherty and Holguin at the secondary inspection area because the questions asked there constituted custodial interrogation. Additionally, he contends that even though he signed a written form waiving his Miranda rights, that form was invalid because he did not voluntarily sign the form. Instead, Rodriguez contends Inspectors created a coercive atmosphere that rendered his signing of the waiver form, and all statements made thereafter, involuntary. We reject Rodriguez's arguments.
 
 
 9
 This court has stated that "[r]outine questioning by customs officials at the border is normally not custodial interrogation that triggers Miranda." United States v. Manasen, 909 F.2d 1357, 1358 (9th Cir.1990). Miranda requirements are triggered at a customs inspection only where (1) the person reasonably believes that he or she is not free to leave, and (2) inspectors have probable cause to believe that the entrant has committed a crime related to the customs inspection. Id. at 1358-59; see also United States v. Troise, 796 F.2d 310, 314 (9th Cir.1986).
 
 
 10
 First, as the district court properly determined, the investigators' initial questions did not constitute custodial interrogation but were instead routine border questions. Red at 12 (citing RT 8/19/91 at 38-39). Detention of Rodriguez in the search room while his van was being examined was constitutionally permissible because it "was reasonably related in scope to the circumstances which justified it initially." United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985).
 
 
 11
 Even if Rodriguez was technically "in custody" once the inspectors brought him to the search room, he was still not entitled to be read his Miranda rights until the inspectors had probable cause to believe he had committed a crime. The record reveals that Rodriguez was properly advised of his Miranda rights as soon as the investigators had probable cause to believe he was illegally importing marijuana into the country in his van. Rodriguez concedes that he was then given a written form advising him of his Miranda rights, that he read his rights out loud to the inspectors as he was directed, and that he fully understood those rights when he signed the written form. As this court has recognized, a "written waiver in particular is strong evidence that the waiver was valid." Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir.1990).
 
 
 12
 Rodriguez nonetheless argues that the customs officials created such a "coercive atmosphere" that his signing of the form must be held involuntary. "[T]he voluntariness inquiry focuses on whether the police's conduct was constitutionally acceptable." Id. at 819. Rodriguez cannot point to any actions of the investigators that were constitutionally unacceptable. The investigators did not engage in the type of trickery, deceit or intimidation that might invalidate the signing of the written waiver form.
 
 
 13
 We therefore conclude that the customs investigators were not required to read Rodriguez his Miranda rights during their initial questioning of him, and that his subsequent written waiver of his Miranda rights was voluntarily made.
 
 III.
 
 14
 Rodriguez next argues that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to show that Rodriguez knew of the existence of the marijuana in his van when he crossed the border. Rodriguez contended at trial that he was not aware of the drugs, and that they must have been placed there by the garagemen who repaired his van in Mexico. Viewing the evidence in the light most favorable to the government, we must determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. See United States v. Sharif, 817 F.2d 1375, 1377 (9th Cir.1987). We conclude that there was sufficient evidence to support Rodriguez's conviction.
 
 
 15
 First, Rodriguez was driving, and in sole possession of, the van in which the marijuana was discovered. See United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.1988) ("possession of large quantities of narcotics may alone be sufficient to support the finding of knowing possession"). Second, the quantity of drugs and its net worth make it unlikely that Rodriguez was merely an unknowing dupe. See United States v. Castro, 972 F.2d 1107, 1111 (9th Cir.1992) (jury reasonably could have concluded that defendant had knowledge of large quantity of cocaine given government expert testimony that such an expensive shipment "would have never been entrusted to an unknowing dupe").[1] While this evidence may be merely circumstantial, it does suffice to overcome a motion for acquittal.
 
 IV.
 
 16
 Next, Rodriguez contends that the district court erred by failing to rule as a matter of law that Rodriguez was entitled to a downward departure based on aberrant behavior. Rodriguez did not request downward departure on this ground, however, but instead only on the ground that he was a minor or minimal participant. We find that Rodriguez waived the issue by not presenting it to the sentencing court. See United States v. Quesada, 972 F.2d 281, 284 (9th Cir.1992) (defendant waives argument for downward departure where he fails to present it before the district court), cert. denied, --- U.S. ----, 61 U.S.L.W. 3584 (Feb. 22, 1993).
 
 V.
 
 17
 Finally, Rodriguez argues that his substantial rights were violated by the testimony of government expert witness Agent Richard Nuckles, a former agent of the U.S. Drug Enforcement Administration. We reject this claim as well.
 
 
 18
 Agent Nuckles testified that, based on his experience, there are no unwitting participants in drug smuggling transactions and drivers of loaded vehicles always know that they are hauling narcotics. Red at 19 (citing RT 4/14/92 at 98). Even though Rodriguez's counsel failed to object to this testimony, the district court sua sponte expressed concern that this testimony went to Rodriguez's state of mind. See Fed.R.Evid. 704(b) (expert in criminal case may not testify as to whether defendant had requisite mental state constituting an element of the offense); see also United States v. Brodie, 858 F.2d 492, 496 (9th Cir.1988). The court gave the jury the following limited instruction, to which defense counsel did not object:
 
 
 19
 As part of Agent Nuckles' testimony, and I am just referring to this one portion now, Agent Nuckles testified that drivers know that they are hauling narcotics or a drug. I am going to instruct you at this time to disregard that particular portion of Agent Nuckles' testimony. What the defendant's state of mind and whether he had the requisite state of mind is a question for the jury as the finder of fact to decide, and that is your decision and yours alone to make.
 
 
 20
 Red at 46 (quoting RT 4/15/92 at 14). While Rodriguez acknowledges that he did not object, he nonetheless argues that he was so prejudiced by the agent's testimony, notwithstanding the court's limiting instruction, that his substantial rights were violated because the jury could not be expected to follow the court's instruction. We reject his argument that he was deprived of a fair trial, and that this court should reverse even on plain error review.
 
 
 21
 The district court's contemporaneous limiting instruction rendered harmless any error that might have resulted from the jury's hearing Agent Nuckles' improper testimony. See United States v. Laykin, 886 F.2d 1534, 1544 (9th Cir.1989); see also Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987) (noting general presumption "that a jury will follow an instruction to disregard inadmissible evidence"). This case does not present the type of extraordinary circumstances warranting use of the "exceptional remedy" of a plain error reversal. See United States v. Bryan, 868 F.2d 1032, 1039 (9th Cir.), cert. denied, 493 U.S. 858 (1989) (plain error reversal only invoked when necessary to prevent miscarriage of justice or to preserve integrity and reputation of judicial process).
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government here introduced expert testimony similar to that introduced in Castro