64 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
Angel GARCIA-SCHOBER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Angel GARCIA-SCHOBER, Defendant-Appellee.
 Nos. 94-50346, 94-50440.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 9, 1995.
Decided Aug. 18, 1995.
 
 Before: THOMPSON, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * OVERVIEW
 
 
 3
 Angel Garcia-Schober ("Garcia") appeals his jury conviction for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1) and 846. Garcia contends 1) the evidence was insufficient to show that an agreement ever existed and, therefore, did not support his conspiracy conviction; 2) the district court erred in admitting subsequent similar act evidence of the stop of Garcia and seizure of $1.1 million in an unrelated investigation; and 3) the district court erred in denying Garcia's motion to suppress certain evidence because the government failed to establish the statutorily required element of necessity for a telephonic wiretap. The government cross-appeals contending the district court erred in awarding Garcia a one-level downward adjustment for having a minor participant role. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm Garcia's conviction but vacate his sentence and remand for resentencing.
 
 II
 SUFFICIENCY OF THE EVIDENCE
 
 4
 Garcia contends his conviction must be reversed because the evidence did not establish the existence of a conspiratorial agreement. The appropriate standard of review for determining whether the evidence was sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). To prove conspiracy, the government must show (1) an agreement (2) to engage in criminal activity. See United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989).[1] The agreement need not be explicit, but may be inferred from circumstantial evidence. United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980). "Inferences of the existence of such an agreement may be drawn 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.' " Kiriki, 756 F.2d at 1453 (quoting United States v. Monroe, 552 F.2d 860, 862-63 (9th Cir.), cert. denied, 431 U.S. 972 (1977)).
 
 
 5
 Garcia contends the evidence was insufficient to establish beyond a reasonable doubt that an agreement was ever reached for the distribution of cocaine. Relying primarily on United States v. Melchor-Lopez, 627 F.2d 886 (9th Cir.1980), he argues that because the parties involved never reached an agreement as to terms such as price, quantity, method of delivery, method of payment, etc., there was no agreement on which to base the conspiracy charge.
 
 
 6
 Garcia mischaracterizes the issue. The true issue in this case is not whether an agreement was reached between Garcia and the government informant for the sale of the cocaine, but rather, whether an agreement was reached between Garcia, Giovanni Fontes Scolari, and Jose Francisco Sanchez-Tirado (a/k/a Jose Ferreira) (hereinafter "Ferreira") to possess with intent to distribute cocaine.
 
 
 7
 Garcia's reliance on Melchor-Lopez is misplaced. Melchor-Lopez involved two defendants, Melchor-Lopez and Kommatas, who were convicted of conspiracy to import and to possess and distribute a controlled substance. Id. at 887. The key figure in the alleged conspiracy was Salvatore Rina who attempted to structure a deal between Melchor-Lopez as the supplier of the drugs and Kommatas as the purchaser of the drugs. Rina met separately with Melchor-Lopez and Kommatas to lay the groundwork for the deal. Melchor-Lopez and Kommatas never dealt directly with each other and never reached an agreement with Rina. Id. at 888-890. We ruled the evidence was insufficient to establish an agreement between any of the parties because no terms were ever agreed upon. Melchor-Lopez, 627 F.2d at 891. Although Melchor-Lopez offered to supply the drugs, he set forth certain preconditions which were never met. Id. at 891. As for Kommatas, although he expressed interest in purchasing the drugs, he never came to an agreement with Rina as to the terms of the transaction. Id. at 892. Each of the alleged coconspirators was acting alone in his attempts to set up the deal: Melchor-Lopez as the supplier, Kommatas as the purchaser, and Rina as the intermediary. Because no agreement was ever reached allowing the transaction to occur, an agreement to support a conspiracy charge could not be inferred.
 
 
 8
 In contrast, in the instant case, Garcia, Scolari, and Ferreira were working in concert in an attempt to purchase cocaine from the government informant. The agreement which forms the basis of the conspiracy is not the agreement to purchase cocaine from the government informant, but rather, the agreement between themselves that they would work together to purchase the cocaine. As such, this case is controlled by United States v. Kiriki, 756 F.2d 1455 (9th Cir.1985).
 
 
 9
 In Kiriki, Nobuo Kiriki was convicted of conspiring with Henry Matsumoto to transport stolen property and smuggle firearms. Id. at 1450. Kiriki and Matsumoto attempted to obtain stolen jewelry and firearms from Alan Anami, an undercover police officer. Id. Although extensive negotiations were conducted, the deal never materialized. On appeal, Kiriki, relying on Melchor-Lopez, argued that there could be no conspiracy because an agreement was never reached with Anami for the sale of the stolen jewelry and firearms.
 
 We distinguished Melchor-Lopez stating:
 
 10
 In contrast here, the two defendants worked together to elicit Anami's assistance in acquiring stolen jewelry which their associates would take to Japan and in arranging for acquisition and smuggling of firearms. The evidence supported a finding that they agreed between themselves to carry on illegal activity. The extent of their negotiations with Anami was a sufficient basis for "any rational trier of fact" to find an agreement between Kiriki and Matsumoto to engage in an illegal act.
 
 
 11
 Id. at 1455.
 
 
 12
 We again applied this distinction in United States v. Sharif, 817 F.2d 1375 (9th Cir.1987). In a factual scenario similar to that in Kiriki, we stated: "The focus of our judicial inquiry must be on the relationship between the co-conspirators and whether they were acting in concert. We should not focus upon the actions of others." Id. at 1378.
 
 
 13
 Similarly, in the instant case, Garcia, Scolari, and Ferreira worked together in an attempt to structure a deal by which they could acquire large amounts of cocaine. There was sufficient evidence to show beyond a reasonable doubt that they agreed between themselves to carry on an illegal activity. As in Kiriki, the extent of their negotiations was a sufficient basis for a rational trier of fact to find an agreement between Garcia, Scolari, and Ferreira to carry out an illegal act, and therefore, was sufficient to establish the existence of a conspiracy.
 
 III
 SUBSEQUENT SIMILAR ACT EVIDENCE
 
 14
 Garcia contends the district court erred in allowing the evidence of the seizure of $1.1 million when he was stopped in Houston, Texas as the result of an unrelated investigation, as other act evidence pursuant to Federal Rule of Evidence 404(b). This stop and seizure occurred several months after the termination of the conspiracy for which Garcia was convicted in the instant case.
 
 
 15
 We review the district court's admission of other act evidence under Rule 404(b) for an abuse of discretion. United States v. Corona, 34 F.3d 876, 881 (9th Cir.1994). Whether the evidence falls within the scope of Rule 404(b) is reviewed de novo. United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993).
 
 Rule 404(b) provides in pertinent part:
 
 16
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 17
 Fed.R.Evid. 404(b). We have adopted a four-part test to determine whether evidence falls within the scope of Rule 404(b): " 'evidence of prior or subsequent criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.' " Corona, 34 F.3d at 881 (quoting United States v. Luna, 21 F.3d 874, 878 (9th Cir.1994).
 
 
 18
 In the instant case, the evidence of the seizure of $1.1 million dollars was subsequent similar act evidence. The government alleged that Garcia was the financier of the cocaine deal it was attempting to structure through an informant. To be the financier of the deal, it was necessary for Garcia to be able to obtain large sums of cash. The evidence of the seizure was relevant to show that Garcia had the opportunity to acquire large sums of money and, therefore, could act as the financier for the cocaine transaction related to the conspiracy charge in the instant case. The district court correctly determined that this evidence was within the scope of Rule 404(b).
 
 
 19
 Furthermore, whether or not Garcia disputed the fact that he had the opportunity to acquire large sums of money is of no consequence in determining whether evidence of opportunity is relevant. As the Advisory Committee Note to Rule 401 states:
 
 
 20
 The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute.
 
 
 21
 Fed.R.Evid. 401, Advisory Committee's Note. The evidence of the seizure was clearly relevant to show Garcia's ability to acquire money which could be used to finance a cocaine transaction. The evidence both falls within the scope of Rule 404(b) and is relevant.
 
 
 22
 Garcia's next contention with regard to the admission of the evidence is that the unfair prejudice against him outweighed its probative value and, therefore, should have been excluded under Rule 403. Garcia argues that the subsequent-act evidence was offered to inflame the jury and to show he had a criminal propensity and the character of a drug dealer.
 
 
 23
 The district court carefully weighed the probative value of the evidence the government sought to introduce. The district court prohibited the government from introducing evidence of $298,000 which had been seized from Garcia's associate on June 9, 1992. Furthermore, the district court gave the following limiting instruction to the jury both at the time the evidence was offered and again at the conclusion of the case:
 
 
 24
 Now, you may consider the evidence concerning this particular act only for a limited purpose, and that is, only as it bears on the defendant's opportunity to obtain money and for no other purpose.
 
 
 25
 The district court's careful tailoring of the subsequent-act evidence allowed before the jury combined with the repeated limiting instructions were sufficient to satisfy Rule 403, and the district court's determination that the prejudice did not outweigh the probative value of the evidence was not an abuse of its discretion.
 
 
 26
 Finally, Garcia argues the Assistant United States Attorney's ("AUSA") examination of the agent who seized the $1.1 million went beyond the permissible scope established by the district court in its ruling that the evidence of the seizure be admitted solely for the purpose of establishing that Garcia had access to large amounts cash. Specifically, the AUSA elicited testimony that (1) the agent was with the Drug Enforcement Administration; (2) the money was composed of approximately 54,000 $20 bills; (3) there were no drugs discovered in Garcia's car at the time of the seizure; and (4) the agent seized the money as a result of a positive canine alert.
 
 
 27
 These questions exceeded the permissible scope of examination relating to the seizure of the $1.1 million. Nevertheless, we may reverse Garcia's conviction "only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict. Arambula-Ruiz, 987 F.2d at 605 (internal quotations omitted).
 
 
 28
 The evidence presented at trial of Garcia's involvement in the conspiracy, including phone calls, face-to-face meetings, and even a "flash" of money to the government informant, was overwhelming. Moreover, Garcia's theory of defense was not that he was not a potential drug dealer, but rather, that an agreement to purchase cocaine was never reached, thus, no conspiracy was ever formed. As a result, any prejudice to Garcia was minimal. Therefore, we conclude that any error in the examination of the agent who seized the $1.1 million was harmless.
 
 IV
 TELEPHONIC WIRETAP
 
 29
 Garcia contends the district court erred in allowing evidence obtained from telephonic wiretaps because the wiretaps were not justified. Specifically, Garcia argues the warrants for the telephonic wiretaps were invalid because the government failed to establish the necessity for the wiretaps and because the affidavit in the wiretap application contained material omissions.
 
 
 30
 A district court's authorization of a wiretap is reviewed for an abuse of discretion. See United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir.1988). However, we review de novo whether the requisite full and complete statement of facts was submitted in compliance with 18 U.S.C. Sec. 2518(1)(c). Id. The ultimate question of whether a false statement or omission is necessary to a finding of probable cause is a mixed question of law and fact reviewed de novo. United States v. Tham, 960 F.2d 1391, 1395 (9th Cir.1992).
 
 
 31
 In the instant case, the wiretap being challenged by Garcia was of the residence and business phones of Scolari. Therefore, Garcia has standing to challenge the admissibility of only those phone conversations to which he was a party. 18 U.S.C. Sec. 2510(11). Garcia has identified three conversations surveilled by the government to which he was a party.
 
 
 32
 Section 2518 requires that an application for a wiretap must include, among other things:
 
 
 33
 (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.
 
 
 34
 18 U.S.C. Sec. 2518(1)(c). The district court must determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(3)(c). These two sections create the "necessity" requirement for wiretaps. United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir.1985). We have determined that to establish necessity "[t]he affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail." Id. at 1486 (quoting United States v. Robinson, 698 F.2d 448, 453 (D.C.Cir.1983). "In evaluating the showing of the government's good faith effort to use normal alternative means or its failure to use those means because of danger or a low probability of success, the reviewing court should use a standard of reasonableness." Id.
 
 
 35
 In the instant case, Agent Higgins submitted an exhaustive 103-page affidavit setting forth the facts of the investigation, the investigative techniques that had been employed and their respective results, the investigative techniques which had not been utilized and the reasons why they would not be effective, and the reasons why he believed a telephonic wiretap was necessary and the results he hoped to obtain from the wiretap. The reasons Agent Higgins believed a wiretap was necessary included: 1) the existence of only one informant and the danger to her safety in light of the violent reputation of the Orjuela family; 2) the difficulty of conducting physical surveillance of the targets because much of the activity occurred in Mexico (where FBI surveillance would have been illegal) and in residential neighborhoods; 3) the inadequacy of pen register devices on the targets' telephones; and 4) the increased danger which would be involved in conducting a grand jury investigation. Moreover, the telephonic wiretaps were necessary to identify everyone involved in the drug conspiracy ring. See United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.) ("We have consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of suppliers, major buyers or other satellite conspirators."), cert. denied, 498 U.S. 905, and cert. denied, 489 U.S. 948 (1990). These reasons were more than mere bald or conclusory statements as Garcia would have us believe.
 
 
 36
 The affidavit of Agent Higgins was sufficient to establish the necessity of the telephonic wiretaps. Insofar as Garcia attacks the reasons offered in the affidavit to show necessity, he has failed to show that the district court abused its discretion in relying on them to grant the wiretap.
 
 
 37
 Garcia also contends Agent Higgins omitted material information in his affidavit. Specifically, Garcia claims Higgins omitted 1) that the FBI knew the ham radio frequencies the Mexican organization was using to communicate with Columbia, 2) that the government was supplying the cocaine for the deal, and 3) that the government informant was the daughter of Henry Orjuela, a leader of the Cali Cocaine Cartel.
 
 
 38
 As to the first and third facts, Garcia fails to show how the inclusion of those facts in the wiretap application would have been material to the grant or denial of the application. As to the second fact, at the time of the initial application for wiretap, the agents were still attempting to get the Orjuela family to supply the cocaine. The operation had not yet evolved into a reverse sting operation.
 
 
 39
 Therefore, any false statements or omissions which may have been made were not material to a finding of probable cause. The district court correctly admitted evidence of Garcia's telephone conversations obtained from the telephonic wiretaps.
 
 V
 SENTENCING
 
 40
 The government cross-appeals contending the district court erred in awarding Garcia a one-level downward adjustment for being a minor participant in the conspiracy. We review the district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). We review the district court's factual finding that Garcia was a minor participant for clear error. See United States v. Pinkney, 15 F.3d 825, 827 (9th Cir.1994).
 
 
 41
 The government argues the district court erred in finding that Garcia was a minor participant in the conspiracy. The government asserts that Garcia was the financier for the deal and that without Garcia's involvement, the deal never could have happened.
 
 
 42
 The district court may adjust downward a defendant's sentence where it finds that the defendant was less culpable than the other participants in the criminal activity. U.S.S.G. Sec. 3B1.2 application note 4. The district court made the following finding at the sentencing hearing:
 
 
 43
 As far as whether you played a minor role in this case, or in this venture, Mr. Garcia, and the government has pointed out that I earlier today said that you played a well-defined significant role in this venture. You came into this venture late, but you came in because the others contacted you, or somehow got a hold of you and decided that you would be the person they would turn and to be able to obtain the money from.
 
 
 44
 When I look at your role--which I believe I have the right to do--in light of the others that were involved in this case, Mr. Scolari and Mr. [Ferreira], that your role, although very significant, certainly was somewhat less than theirs....
 
 
 45
 The district court's findings that Garcia came into the conspiracy at a later time and at the request of others are supported by the record. The district court needed only to find that Garcia was less culpable than Scolari and Ferreira to justify awarding Garcia a downward adjustment for being a minor participant. The district court so found and the government has failed to show that this finding was clearly erroneous. Therefore, we conclude the district court acted within its discretion to grant Garcia the downward adjustment for being a minor participant.
 
 
 46
 Next, the government contends the district court lacked the authority to grant Garcia a "one-level" reduction for his minor participant status. The district court stated at sentencing: "[Garcia's] role, although very significant, certainly was somewhat less than theirs; however, I do not believe it should be a two-level downward adjustment. I am exercising my discretion to allow a one-level downward adjustment for role."
 
 
 47
 Section 3B1.2 of the United States Sentencing Guidelines provides:
 
 
 48
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 49
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 50
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 51
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 52
 There is no provision in this section for a one-level downward adjustment for the defendant's role in the offense.
 
 
 53
 The district court exceeded its authority under the Sentencing Guidelines not by finding that Garcia was a minor participant, but by refusing to grant him a two-level adjustment. Therefore, we reverse Garcia's sentence and remand to the district court to determine whether Garcia is entitled to a downward adjustment for minor participant status as provided by the Sentencing Guidelines.
 
 VI
 CONCLUSION
 
 54
 For the foregoing reasons, Garcia's conviction for conspiracy is affirmed. Because the Sentencing Guidelines do not provide for a one-level downward adjustment for being a minor participant, we vacate Garcia's sentence and remand to the district court.
 
 
 55
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36.3
 
 
 [1]
 The Ninth Circuit's additional element of one or more overt acts in furtherance of the conspiracy has been vacated as unnecessary by the United States Supreme Court. United States v. Shabani, 115 S.Ct. 382 (1994)