**UNITED STATES of America,**

v.

**Raffaele IENNACO, Appellant.**

**No. 89–3047.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1990.

Decided Jan. 26, 1990.

W. Gary Kohlman, Washington, D.C., for appellant.

Norman C. Bay, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., John R. Fisher, and Betty Ann Soiefer, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA and RUTH BADER GINSBURG, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Raffaele Iennaco appeals his convictions of conspiracy to distribute and possess with intent to distribute heroin and/or cocaine, 21 U.S.C. § 846, three counts of unlawful use of the telephone to facilitate the distribution of narcotics, 21 U.S.C. § 843(b), and interstate travel in aid of a racketeering enterprise in violation of the Travel Act, 18 U.S.C. § 1952. Iennaco contends that his convictions of the telephone facilitation counts must be reversed because there was

no proof of commission of the distribution offenses underlying those counts. He further maintains that the government failed to prove the asserted conspiracy. In addition, Iennaco objects to the admission of certain evidence, the length of the prearrest delay, and excesses in the prosecutor's closing argument.

We reverse Iennaco's convictions in their entirety. The unlawful telephone use counts fail because, as the government now concedes, the evidence did not prove commission by anyone of the distribution offenses Iennaco was charged with facilitating. Proof of the actual commission of the underlying felony, we hold, is an essential element of a § 843(b) telephone facilitation offense. Nor did the evidence prove that Iennaco proceeded beyond exploratory and inconclusive conversations to the point of agreement with any alleged coconspirator to commit an unlawful act. The conspiracy count, therefore, fails as well. Finally, we reverse the Travel Act conviction. The existence of a criminal enterprise is an essential element of a Travel Act offense; the indictment identified the criminal enterprise as the alleged conspiracy. Because we find insufficient evidence to show the conspiracy, the Travel Act conviction is insupportable.[1]

## I.

This case arose in the wake of the Federal Bureau of Investigation's attempt to penetrate the Italian–American heroin ring, known as the "Pizza Connection." Tr. II at 8–9, 12. To tap into the heroin importers in New York and Miami, FBI agent Edgar Robb posed as a wealthy narcotics dealer. Id. at 11–16. In his guise as a mobster, Robb gained the confidence of Luigi Visciano, a waiter in Washington, D.C. who spoke Italian. In the fall of 1986, Visciano became Robb's employee and received a salary to connect Robb with people Visciano believed could supply narcotics. Tr. III at 76–78.

Visciano drew Iennaco into the events that led to the latter's arrest and conviction. Although they had been out of touch for several months, Visciano had worked with Iennaco as a waiter in Florida and believed that Iennaco's uncle, a barber, had organized crime connections. Visciano thought that Iennaco might be able to supply Robb with heroin through the Miami pipeline. Tr. II at 25. Iennaco, who had emigrated from Italy some eight years ago, was then working as a waiter in New York, where he lived in modest circumstances throughout the time of the alleged conspiracy. Tr. V at 40–46.

With Robb's consent, on February 5, 1987, Visciano called Iennaco in New York and offered to pay for him to travel to Washington, D.C. to discuss potential employment. Visciano gave Iennaco no hint that the employment involved drugs or illegal activity of any kind. Def. Ex. 1A. On February 11, 1987, Iennaco traveled to Washington and met with Visciano and Robb. During the meeting, Robb told Iennaco he dealt in heroin, code-named "red wine," and was looking for supplies. Gov't Ex. 40 at 23, 26. Robb stressed that he was interested in heroin only and not other drugs: "Or somebody comes to me and says, 'I got ... uh ... you know ... and this other stuff.['] ... I'm not interested, I'm not f.... interested. I wanna buy quantities of heroin that nobody else could buy." Id. at 24.

Iennaco told Robb that he would be willing to introduce Robb to potential suppliers in Italy if Robb would pay for him to go there, but Robb rejected this proposal. Id. at 36–37, 43. Iennaco also said he might be able to obtain "white wine," presumably cocaine. Id. at 43. Robb said he was not interested in cocaine unless it was at the right price, id., but that they could "talk about things as time goes along." Id. at 51. Iennaco returned to New York City.

On February 16, 1987, Iennaco called Robb and offered to sell him gems directly from the mine; Robb said he was not interested, he was in the wine business. The next day, February 17, 1987, Visciano told Robb that Iennaco did not want to work with them. Tr. II at 52–53. Visciano con-

---

**1.** We therefore need not address Iennaco's other arguments.

tinued to approach Iennaco, however; eventually, on April 13, 1987, Visciano called Robb and said that Iennaco could obtain five "bottles" of "white wine" for $22,000 each; Robb said he was not interested at that price. Gov't Ex. 42 at 5. On May 12, Robb told Visciano that he was not interested in doing business in white wine. Tr. II at 77.

On May 19, 1987, Iennaco told Visciano he had received an offer to sell "five" kilograms of cocaine at "eighteen." Visciano said he would relay the information to Robb and "let [Iennaco] know." Gov't Ex. 38 at 1. Robb rejected the offer. Tr. II at 82; Gov't Ex. 43 at 5. Robb later told Visciano that he might agree to do business in cocaine if Iennaco would bring him a sample. Tr. III at 11–12.

On May 20, Iennaco traveled to Washington at Robb's request but did not supply a sample. *See* Gov't Ex. 41. At the meeting, Robb said he was not in the "white wine business." *Id.* at 5. Iennaco reiterated his offer to go to Italy, which Robb once again rejected. *Id.* at 32, 36. Iennaco once again offered to sell Robb gems and also offered to sell him other merchandise; Robb declined these offers. *Id.* at 25–26. Iennaco then returned to New York.

Visciano spoke to Iennaco twice on May 22 to discuss the possibility of obtaining a sample of cocaine; their final call ended with Visciano's assertion that he would call back and "let [Iennaco] know" if he would do the deal. Gov't Ex. 33 at 1–3. Robb initiated several other conversations with Iennaco in which they did not discuss drugs. Several months later, in February 1988, Robb called Iennaco again, and Iennaco said he did not want to meet with Robb or do business with him. Tr. III at 66–67.

## II.

 Iennaco argues that his convictions for using a telephone to facilitate "a viola-

tion of Section 841 of Title 21, United States Code, that is, a distribution of a quantity of cocaine" must be reversed because the government failed to produce any evidence that anyone committed the underlying distribution offense. We agree.

In *United States v. Sobamowo*, No. 87–3056, slip op. at 11 (D.C.Cir. Dec. 19, 1989), this court assumed without deciding that the underlying offense is an element of the telephone facilitation charge. The government has conceded—albeit belatedly—that this interpretation of the statute is correct,[2] and the interpretation is reinforced by the legislative history. *See* H.Rep. No. 1444, 91st Cong., 2d Sess. 46, *reprinted in* 1970 U.S.Code Cong. and Admin.News 4566, 4616; S.Rep. No. 613, 91st Cong., 1st Sess. 9, 26 (1969).

We therefore formally align ourselves with our sister circuits, which have uniformly held that, to obtain a conviction on a charge of telephone facilitation, the government must prove actual commission (by the defendant or another person) of the alleged underlying offense. *See United States v. Dotson*, 871 F.2d 1318, 1321 (6th Cir.1989); *United States v. Johnstone*, 856 F.2d 539, 543 (3d Cir.1988); *United States v. Mims*, 812 F.2d 1068, 1077 (8th Cir.1987); *United States v. Russo*, 796 F.2d 1443, 1463 (11th Cir.1986); *United States v. Jefferson*, 714 F.2d 689, 699 (7th Cir.1983); *United States v. Rey*, 641 F.2d 222, 224 n. 6 (5th Cir.), *cert. denied*, 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981); *United States v. Webster*, 639 F.2d 174, 189 (4th Cir.1981); *United States v. Watson*, 594 F.2d 1330, 1342–43 (10th Cir.), *cert. denied sub nom. Brown v. United States*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Steinberg*, 525 F.2d 1126 (2d Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see also Unit-*

---

**2.** The government conceded in its brief only that it had not introduced any evidence to show that anyone committed the alleged distribution offense. *See* Gov't Br. at 31. However, the government promptly acknowledged at oral argument that proof of commission was essential to the facilitation convictions. In light of the federal courts' overwhelming agreement on this point, the government could have pared down the controversy, in fairness to the defendant-appellant and to spare this court's labors, by conceding on brief, without "ifs," that Iennaco's convictions on these counts could not stand.

ed States v. Thomas, 586 F.2d 123, 130–31 (9th Cir.1978) (assuming that government must prove commission of underlying felony and holding that such felony can be a conspiracy).

### III.

■ We conclude as well that the evidence was insufficient to prove that Iennaco conspired to distribute cocaine and/or heroin. The gravamen of the crime of conspiracy is an agreement to commit an unlawful act. *See United States v. Treadwell*, 760 F.2d 327, 336 (D.C.Cir.1985) (citing *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942)), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). The government, however, did not show that Iennaco actually reached an agreement with any alleged coconspirator.

The court carefully elicited from counsel at oral argument that the only conspiracy alleged in this case was one between Iennaco and Visciano to supply drugs to Robb:[3]

COURT: Who were the conspirators?

COUNSEL: The conspirators were Visciano and the Appellant.

. . . .

COURT: What did they conspire to do?

COUNSEL: They conspired to possess with intent to distribute cocaine and heroin and to distribute cocaine and heroin as well.

. . . .

COURT: To distribute cocaine and heroin just generally, to all the world? Or, as you said in your brief, "the appellant entered into an agreement with his coconspirator," whom you have identified as Visciano, "to supply the undercover agent with drugs" and "appellant worked closely with his coconspirator to locate drugs for the agent"?

COUNSEL: Yes, Your Honor.

. . . .

COURT: To anyone else but the agent?

COUNSEL: I don't think there is any evidence establishing that.

COURT: . . . . So the conspiracy you say was proved was between Visciano and Appellant to possess drugs for distribution to Robb?

COUNSEL: Yes, Your Honor.

The government's evidence, however, showed only negotiations, solicitations and counter-offers, but no agreement between Iennaco and Visciano, acting on behalf of Robb: Robb wanted to buy heroin, and Iennaco had none to sell; Iennaco offered to sell gems or cocaine, but Robb never agreed to buy. One searches the record in vain for proof that Iennaco agreed to supply anything matching offers Robb made personally or through Visciano.

Specifically, although Iennaco offered to go with Visciano or Robb to Italy to find heroin sources, Robb rejected this offer. He did not want Visciano to go, and as for himself said, "I'm not ready to leave the U.S. yet ... because I can't, I just can't go now. I can't go to Italy, probably sometime in June." Gov't Ex. 40 at 36–37; Gov't Ex. 41 at 32, 36. The government admitted at oral argument that Iennaco never offered to procure heroin for Visciano or Robb in the United States. Instead, Iennaco offered Robb gems, cars, and other merchandise, but Robb was not interested. Tr. II at 52–53; Gov't Ex. 41 at 25–26. He did not want "other stuff.... [He wanted to] buy quantities of heroin that nobody else could buy." Gov't Ex. 41 at 24.

Iennaco also offered to supply Robb through Visciano with "white wine," presumably cocaine. Gov't Ex. 42 at 5; Gov't Ex. 38 at 1. However, Visciano always said he had first to check with Robb, his employer. Gov't Ex. 42 at 5; Gov't Ex. 38 at 1; Gov't Ex. 43 at 2. Robb never accepted Iennaco's offers, although his reasons were inconsistent. He said at the February 11, 1987 meeting that he was interested only in heroin and that he would consider a cocaine deal only if it were at the right

3. As a government agent, Robb could not be a conspirator himself. *See, e.g., United States v. Barboa*, 777 F.2d 1420, 1422 (10th Cir.1985);

*United States v. Escobar de Bright*, 742 F.2d 1196, 1200 (9th Cir.1984).

price. He rejected Iennaco's first offer: "Too expensive shoes." Gov't Ex. 42 at 5. He rejected Iennaco's second offer out of hand. Tr. II at 82; Gov't Ex. 43 at 5. Later, he said he might be interested if Iennaco brought a sample, but Visciano said Iennaco did not have one. Tr. III at 11–12. Characteristically, Iennaco did not supply a sample at the final, May 20, 1987 meeting, at which Robb repeated he was not in the white wine business. Gov't Ex. 41 at 5. Robb also said he was interested in cocaine only if it was "absolutely perfect" and "very cheap." *Id.* at 13. The government introduced no evidence that Iennaco at any point actually possessed any cocaine himself or sold any cocaine, *i.e.*, that he did anything more than talk, puff or brag.

"Exploratory and inconclusive" or "preliminary" discussions and negotiations are not sufficient to establish an agreement. *See United States v. Goff,* 847 F.2d 149, 167–68 (5th Cir.), *modified on another point,* 847 F.2d 178, *cert. denied sub nom. Kuntze v. United States,* 109 S.Ct. 324 (1988); *United States v. Melchor–Lopez,* 627 F.2d 886, 892 (9th Cir.1980); *see also United States v. Wieschenberg,* 604 F.2d 326, 334–36 (5th Cir.1979) (no agreement to import munitions without a license where parties "just discussed how [they] could possibly do it"); *Steinberg,* 525 F.2d at 1134 (no conspiracy where defendant's statements regarding agreement were "equivocal").

There need not be a specific agreement as to price, quantity, and time, place and manner of delivery. *See United States v. Sharif,* 817 F.2d 1375, 1378 (9th Cir.1987). But there must be an agreement to commit *some* offense. No such agreement exists if the parties to the alleged conspiracy raise objections and impose unaccepted preconditions on their agreement. *See Sharif,* 817 F.2d at 1378; *United States v. Jones,* 765 F.2d 996, 1002 (11th Cir.1985); *see also United States v. Podolsky,* 798 F.2d 177, 178 (7th Cir.1986) (holding that unaccepted precondition to agreement would have defeated conspiracy but upholding conspiracy conviction based on district court's finding

that agreement existed, although performance was subject to certain conditions).

Iennaco imposed the unaccepted precondition on obtaining heroin for Robb that they travel to Italy. Visciano and Robb *at a minimum* imposed the unaccepted preconditions on buying cocaine that they see a sample and that the drug be absolutely perfect and very cheap. Indeed, Robb repeatedly stated that he was not interested in cocaine at all. There were thus various unaccepted offers and much tentative talk, but no agreement between Iennaco and Visciano, acting on Robb's behalf, to possess or distribute either heroin or cocaine.

## IV.

■ Having concluded that the government's evidence was insufficient to establish a conspiracy, we must also reverse Iennaco's conviction under the Travel Act, 18 U.S.C. § 1952, because the existence of the conspiracy was an essential element of the Travel Act offense.

The indictment charged that Iennaco traveled "with intent to promote, manage, establish, and carry on an unlawful activity, said unlawful activity involving a conspiracy to distribute and possess with intent to distribute [heroin and cocaine] and thereafter did carry on and facilitate the promotion, management and carrying on of said unlawful activity." The Travel Act defines an "unlawful activity" as a "business enterprise ... involving ... narcotics ... offenses." 18 U.S.C. § 1952(b). The existence of a business enterprise, a continuous course of illegal conduct, is a necessary element of a Travel Act offense involving narcotics. *See United States v. Perez,* 700 F.2d 1232, 1239 (8th Cir.1983); *United States v. Corbin,* 662 F.2d 1066, 1072 (4th Cir.1981); *United States v. Wander,* 601 F.2d 1251, 1257 (3d Cir.1979); *United States v. Coran,* 589 F.2d 70, 72 (1st Cir.1978); *United States v. Donaway,* 447 F.2d 940, 944 (9th Cir.1971); *United States v. Roselli,* 432 F.2d 879, 886 (9th Cir.1970), *cert. denied sub nom. Teitelbaum v. United States,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United*

*States v. Zizzo,* 338 F.2d 577, 580 (7th Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965).

The purported business enterprise in this case was the alleged conspiracy. Because there was no conspiracy, there could not have been an enterprise. We must therefore reverse Iennaco's conviction on this count as well. *Cf. Webster,* 639 F.2d at 189 (reversing telephone facilitation conviction after finding evidence insufficient to support conviction for underlying offense); *Steinberg,* 525 F.2d at 1134 (same).

For the foregoing reasons, we conclude that appellant was entitled to judgments of acquittal on all counts, and his convictions are accordingly

*REVERSED.*