**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 95-5782

HAROLD DELANEY LEE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., Chief District Judge.
(CR-95-65)

Argued: June 7, 1996

Decided: July 10, 1996

Before WILKINSON, Chief Judge, and HAMILTON and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public
Defender, Greensboro, North Carolina, for Appellant. Robert Michael
Hamilton, Assistant United States Attorney, Greensboro, North Caro-
lina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States
Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

After a jury trial, the appellant, Harold Delaney Lee, was convicted of using a communication facility (the United States mails) to facilitate the unlawful distribution of cocaine base (crack) in violation of 21 U.S.C. § 843(b).[1] The district court sentenced Lee to forty-eight months' imprisonment. On appeal, Lee challenges his conviction on the grounds that the evidence was insufficient (1) to show that he used the United States mails to send crack, and (2) to show that he distributed crack. For the reasons stated below, we affirm.

I

On May 12, 1993, a narcotics investigator with the Wake County Sheriff's Department, James LeBeuf, was on duty at the Raleigh/Durham airport mail facility. Upon entering the mail facility, LeBeuf released his narcotics dog. During the dog's search of the mail facility, the dog alerted to an express mail package. The package was addressed to a Kim Paylor (a fictitious name) at Route 2, Box 422 in Roxboro, North Carolina. Although the return address on the package was Tonya Jones, 1805 W. Marham, Durham, North Carolina, the postmark on the package showed that it had been mailed from Mt. Vernon, New York.

After LeBeuf's dog alerted to the package, LeBeuf contacted the postal inspector who was on duty, Gerard Cucurullo, and they subsequently obtained a search warrant for the package. Upon opening the

_____

[1] Additionally, Lee was indicted for conspiracy to possess crack with the intent to distribute in violation of 21 U.S.C. § 846. The district court, however, granted Lee's motion for acquittal on this count, finding that the government's evidence failed to show a "conspiracy at all." (J.A. 125).

2

package, LeBeuf and Cucurullo discovered a laundry detergent box wrapped in decorative paper. Inside the laundry detergent box were newspaper, aluminum foil, and black electrical tape. These items, together with some peanut butter and dryer sheets, **2** were wrapped around a large plastic ziplock bag. Inside this bag were six smaller plastic bags. Three of these bags held quantities of crack and these bags were each covered with another plastic bag. The total amount of crack contained in the package was 185.87 grams.

After LeBeuf and Cucurullo discovered the crack, they set up plans for a controlled delivery of the package. Cucurullo, dressed as a mailman, went to the Roxboro address at approximately 5:00 that afternoon and told Vanikki Paylor, a woman coming out of the driveway for the residence, that he had a package for Kim Paylor. Vanikki Paylor, however, told Cucurullo that "[t]here is no Kim Paylor here," (J.A. 36), and she refused to accept the package.

Cucurullo then sent the package and its contents, including the plastic bags, to a forensic lab for analysis. The forensic lab performed a fingerprint examination on the package itself, the laundry detergent box, the decorative paper, the mailing label from the package, and the seven plastic bags. This examination revealed only one latent fingerprint of value. That fingerprint was found on one of the plastic bags containing the crack.

Lee was subsequently arrested by Cucurullo, but the record does not indicate why. After Lee's fingerprints were taken, they were submitted to the forensic lab for comparison with the one fingerprint found on the plastic bag. A comparison of the fingerprints revealed that the fingerprint on the plastic bag containing the crack was Lee's fingerprint.

At trial, the government introduced additional evidence that connected Lee to the package. First, the government introduced Lee's driver's license. Lee had a New York driver's license that showed he was from Mt. Vernon, New York. Second, the government introduced

_____

**2** Fabric softener sheets are often used by drug couriers to conceal other smells. United States v. Grover, No. 94-5903, 1996 WL 226262, at *4 n.3 (4th Cir. May 6, 1996) (per curiam) (unpublished).

3

telephone toll records from 5 Smokeridge Court, Durham, North Carolina, Lee's North Carolina residence. The telephone records indicated that on May 12, 1993 (the day of the attempted delivery) there were numerous calls to and from the Paylor residence (the intended delivery point of the package). The telephone records also indicated that a call was made to Mt. Vernon, New York (the origination point of the package) twenty-three minutes after Cucurullo attempted to deliver the package.

Finally, Vanikki Paylor testified that Lee was a friend of her sister, Lisa Paylor, and that Lisa would take care of Lee's son. Vanikki Paylor also testified that Lee had visited her house often that May.

Based upon this evidence, the jury found Lee guilty of using a communication facility to facilitate the unlawful distribution of crack. Lee noted a timely appeal challenging his conviction.

II

Lee argues that the evidence presented to the jury was insufficient to sustain his conviction. We disagree.

Section 843(b) makes it "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter." 21 U.S.C. § 843(b). To obtain a conviction under § 843(b), the government must prove the following elements beyond a reasonable doubt: (1) that the defendant used a communication facility (in this case the mails); (2) that the defendant used the communication facility to facilitate the commission of a drug offense; and (3) that the defendant did so knowingly and intentionally. See United States v. Dotson, 871 F.2d 1318, 1321 (6th Cir. 1989), opinion amended on other grounds, 895 F.2d 263 (6th Cir.), cert. denied, 498 U.S. 831 (1990); United States v. Johnstone, 856 F.2d 539, 542-43 (3d Cir. 1988). The second element requires that the government prove the commission of the underlying substantive drug offense. See, e.g., United States v. Iennaco, 893 F.2d 394, 396 (D.C. Cir. 1990) (per Ginsburg, J.); United States v. Webster, 639 F.2d 174, 189 (4th

4

Cir.), cert. denied, 454 U.S. 857 (1981); modified on other grounds on reh'g, 669 F.2d 185 (4th Cir.), cert. denied, 456 U.S. 935 (1982).

A

The evidence, viewed in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), supports Lee's conviction for using a communication facility to facilitate the unlawful distribution of cocaine base.

Lee, of course, contends otherwise. First, he argues that the government failed to show that he used the mails. Realizing the significance of his fingerprint being found on a plastic bag containing the crack, Lee asserts that this evidence is not substantial evidence of his guilt. He notes that in United States v. Corso, we stated that "[t]he probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed only during the commission of the crime." 439 F.2d 956, 957 (4th Cir. 1971) (per curiam). We believe that the government's evidence was sufficient to show that Lee's fingerprint was impressed on the plastic bag only during the packing of the crack into the plastic bag or package. First, the evidence showed that great care was taken to prevent the crack from being detected. Under these circumstances, the jury was entitled to conclude that only the person who packed the crack into the package would be in a position to leave his fingerprints on the package. Second, the record contains no alternative explanation for how a plastic bag with Lee's fingerprint was filled with crack and placed into the package. Although Lee showed that his friend, Lisa Paylor, visited his sister in Mt. Vernon, New York, no evidence showed that she ever had access to any plastic bags that Lee had touched. Thus, the jury was entitled to conclude that Lee handled the bag while preparing the package for shipment.

This conclusion is bolstered by the additional evidence introduced by the government connecting Lee to the package. See United States v. Harris, 530 F.2d 576, 579 (4th Cir. 1976) (per curiam) (noting that Corso's holding is not applicable when the government relies on additional substantive evidence to sustain a conviction). The government's additional evidence largely consisted of the telephone records from 5 Smokeridge Court, where Lee was residing while in North

5

Carolina. These records showed that numerous calls were made between 5 Smokeridge Court and the Paylor residence in Roxboro. Further, the records also showed that a call was placed from 5 Smokeridge Court to Mt. Vernon shortly after the attempted delivery of the package. While Lee introduced evidence that his mother often called the Paylor residence in connection with planning a birthday party for her grandson, no evidence was offered to explain the call to Mt. Vernon, New York that occurred shortly after the attempted delivery of the package. Although circumstantial, we believe that this evidence is sufficient to connect Lee to the package. See Holland v. United States, 348 U.S. 121, 139-40 (1954) (noting that circumstantial evidence may support a verdict of guilty even though it fails to "exclude every reasonable hypothesis other than that of guilt"). Accordingly, Lee's reliance on Corso is misplaced.

In sum, we conclude that (1) the evidence of Lee's fingerprint on a plastic bag containing crack, (2) the evidence of phone calls to the originating and intended delivery points of the package, and (3) the evidence that Lee was from Mt. Vernon, constitute substantial evidence, when viewed in the light most favorable to the government, to sustain the jury's finding that Lee used the United States mails to send the package. See Glasser, 315 U.S. at 80.

B

Lee next contends that the government failed to prove the underlying drug offense, which in this case was the distribution of crack. Lee asserts that the government failed to prove that he actually distributed crack because Cucurullo never delivered the package. We disagree.

Unlike the interpretation of distribution pressed upon us by Lee, Congress has provided a broader interpretation of distribution. The term "distribute" means "to deliver . . . a controlled substance. . . ." 21 U.S.C. § 802(11). "Deliver" means "the actual, constructive, or attempted transfer of a controlled substance. . . ." 21 U.S.C. § 802(8). Accordingly, an attempted transfer of a controlled substance constitutes a distribution. See United States v. Pino , 608 F.2d 1001, 1003 (4th Cir. 1979) ("Under the law, the case could properly have been submitted on the theory that Pino, as a principal, was guilty of distribution even if the proof established only an attempt to transfer.").

6

Because placing a package in the mail for delivery obviously constitutes an attempted transfer, the government's proof as to distribution was sufficient. Accordingly, we find Lee's argument on this issue to be without merit.

III

Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

7