J-S35031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                          :  PENNSYLVANIA
           v.                :
                                          :
LAMONT ANTHONY CARROL,     :
                                          :
         Appellant         :  No. 382 EDA 2015

Appeal from the Judgment of Sentence March 9, 2012
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0012280-2008

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E. and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED MAY 11, 2016**

     Lamont Anthony Carrol ("Carrol") appeals from the judgment of sentence imposed following his convictions of possession with intent to deliver a controlled substance, possession of a controlled substance, and criminal use of a communication facility.[1]  We affirm.

     The trial court aptly summarized the factual and procedural history of this case, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 7/6/15, at 1-4.[2]

     Following a jury trial, Carrol was convicted of the above-mentioned crimes.  On March 9, 2012, the trial court sentenced Carrol to 45 to 90 months in prison.

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16); 18 Pa.C.S.A. § 7512.

[2] Carrol entered a separate negotiated guilty plea for possession of a firearm by a prohibited person.  **See** Trial Court Opinion, 7/6/15, at 1 n.1.  However, the firearms charge is not at issue in this case.

On appeal, Carrol raises the following questions for our review:

I. Whether the verdict was contrary to law as to the charge of criminal use of a [communication] facility[?]

II. Whether the verdict was contrary to law as to the charge of possession with intent to deliver[?]

III. Whether the trial court abused its discretion in not allowing the identity of the confidential informant to be revealed[?]

Brief for Appellant at 8 (capitalization omitted).

Carrol's first two claims challenge the sufficiency of the evidence. We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial the in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

**Commonwealth v. Talbert**, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

- 2 -

In his first claim, Carrol argues that the evidence was insufficient to sustain his conviction of criminal use of a communication facility. Brief for Appellant at 15, 17. Carrol concedes that the Commonwealth satisfied its burden as to the first two elements, because he had used a cell phone in the commission of the crimes and the underlying charge is a felony. *Id.* at 16. Carrol asserts that his conversation with Officer Jeffrey Galazka ("Officer Galazka") does not constitute a substantial step toward the commission of the underlying crime. *Id.*

In its Opinion, the trial court addressed Carrol's claim, set forth the relevant law regarding criminal use of a communication facility, and determined that the Commonwealth presented sufficient evidence to sustain the conviction. *See* Trial Court Opinion, 7/6/15, at 5-7. We adopt the sound reasoning of the trial court for the purpose of this appeal. *See id.*

In his second claim, Carrol argues that the evidence was insufficient to sustain his conviction of possession with intent to deliver. Brief for Appellant at 17. Carrol claims that his possession of a large number of individual packets containing crack cocaine is not sufficient, without more, to show an intent to deliver. *Id.* at 18. Carrol asserts that there was insufficient evidence to prove an intent to deliver, even when considering other factors in a totality of the circumstances analysis, such as the four jars found in his house, a lack of other paraphernalia, the use of a confidential informant, and

inconsistencies between Officer Galazka's description and Carrol's physical appearance. *Id.* at 18-19.

In its Opinion, the trial court addressed Carrol's claim, set forth the relevant law regarding possession with intent to deliver, and determined that the Commonwealth presented sufficient evidence to sustain his conviction. **See** Trial Court Opinion, 7/6/15, at 7-10.[3] We adopt the sound reasoning of the trial court for the purpose of this appeal. **See id.**; **see also Commonwealth v. Daniels**, 999 A.2d 590, 595 (Pa. Super. 2010) (stating that "intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case[,]" including the form and packaging of the drug, and the behavior of the defendant); **Commonwealth v. Morrow**, 650 A.2d 907, 912 (Pa. Super. 1994) (stating that there was sufficient evidence to sustain appellant's conviction for possession with intent to deliver where appellant sold marijuana to an informant, who subsequently turned the marijuana over to the police).

In his third claim, Carrol asserts that the trial court erred in denying his Motion to compel disclosure of the identity of the confidential informant. Brief for Appellant at 19. Carrol argues that he should have had the opportunity to examine and question the confidential informant because the

---

[3] With regard to Carrol's claim regarding inconsistencies in Officer Galazka's description of Carrol, this claim goes to the weight of the evidence. The fact-finder was free to weigh the evidence and make a credibility determination, and we will not disturb the fact-finder's judgment. **See Commonwealth v. Hanible**, 836 A.2d 36, 40 (Pa. 2003).

confidential informant was the only disinterested witness, and because the confidential informant was an active participant in the transaction.  *Id.* at 21-22.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion."  ***Commonwealth v. Washington***, 63 A.3d 797, 801 (Pa. Super. 2013).  "The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source."  ***Commonwealth v. Watson***, 69 A.3d 605, 607 (Pa. Super. 2013).  The trial court has the discretion to require the Commonwealth to reveal the names of confidential informants where a defendant makes a showing that "they are material to the preparation of the defense, and that the request is reasonable."  Pa.R.Crim.P. 573(B)(2)(a).

In its Opinion, the trial court addressed Carrol's claim and determined that Carrol did not demonstrate that the confidential informant's identity was material to the preparation of his defense.  ***See*** Trial Court Opinion, 7/6/15, at 11-12.  We adopt the sound reasoning of the trial court for the purpose of this appeal.  ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2016

S3503l-16

RECEIVED

JUL 0 6 2015

APPEALS/POST TRIAL

**IN THE COURT OF COMMON PLEAS**
**FOR THE COUNTY OF PHILADELPHIA**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | TRIAL DIVISION |
| V. | : | CP-51-CR-0012280-2008 |
| LAMONT CARROL, APPELLANT | : | 382 EDA 2015 |

## OPINION

On January 19, 2012, the appellant (Lamont Carrol) was found guilty by a jury. The appellant was convicted of Possession with Intent to Deliver (PWID) (F1), Criminal Use of a Communication Facility (F3), and Intentional Possession of a Controlled Substance (K+I) (M1). On March 9, 2012, the court sentenced the appellant to 45 to 90 months incarceration on his PWID conviction. The court imposed no further penalty on the appellant's Criminal Use of a Communication Facility conviction. The K+I charge merged with the appellant's PWID conviction for purposes of sentencing. The appellant was also ordered to pay a fine of $800.00.

On March 9, 2012, the appellant entered into a negotiated guilty plea for Possession of a Firearm by a Prohibited Person and was sentenced to two (2) to four (4) years incarceration to run consecutively to the above captioned matter. [1] On June 8, 2012, the appellant filed a timely *pro se* Post Conviction Relief Act (PCRA) Petition. He later filed two Supplemental Memorandums of Law in support of the PCRA Petition on October 16, 2012 and May 9, 2013 and an Amended PCRA Petition on November 12, 2013. On January 12, 2015, the court granted the PCRA relief and reinstated his appellate rights.

CP-51-CR-0012280-2008 Comm. v. Carrol, Lamont Anthony
Opinion

7315972731

---

[1] The docket number for the Possession of a Firearm by a Prohibited Person conviction is (CP-51-CR-0002697-2011).

1

On January 21, 2015, the appellant filed a Notice of Appeal to the Superior Court. On February 4, 2015, the Court ordered counsel to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). On March 17, 2015, the appellant filed his Statement and raised the following issues on appeal: [2]

1. The verdict was insufficient as a matter of law as to the charge of criminal use of a communication facility. There was no evidence that correlated the telephone call to any crime to be committed or to have been committed. There was no active conduct by the defendant. There was no evidence he acted intentionally, knowingly and recklessly.

2. The verdict was insufficient as a matter of law as to the charge of possession with intent to deliver. There was nothing to connect the defendant to the controlled buy. There is no doubt that the defendant was a user of drugs and that he had drugs when arrested on his person. The money taken from the defendant at the time of his arrest was not indicative of the defendant being a seller or [sic] drugs. Additionally, nothing was found in the house that would indicate defendant was a seller of drugs. Additionally, the weight of the drugs was suspect. Initially, it was 2.4 grams and then three months later it was 4.6 grams.

3. The Court was in error in not allowing the identity of the confidential informant to be revealed.

## FACTS

On August 5, 2008, Philadelphia police officers set up surveillance on the 3000 block of Agate Street. N.T. 1/18/12, p. 36. Their main objective was to investigate the appellant, who was suspected of selling narcotics from a house located at 3093 Agate Street.[3] N.T. 1/18/12, p. 38. The investigating officer (Jeffery Galazka) used a confidential informant (CI) to assist him in the investigation. Id. Galazka gave the CI $20 dollars in pre-recorded buy money and instructed the CI to purchase narcotics from the appellant. N.T. 1/18/12, p. 39. Galazka and several other

---

[2] Copied verbatim from the appellant's Statement of Matters Complained on Appeal pursuant to Pa.R.A.P. 1925(b).

[3] The CI had been used between 50-100 times by Officer Galazka and is currently being used by the same officer in other investigations. N.T. 1/18/12, p. 37.

officers stayed inside of their vehicle and observed the CI interact with the appellant. N.T. 1/18/12, p. 41. The CI had a brief conversation with the appellant and then handed him the pre-recorded buy money. Id. The appellant walked into 3093 Agate Street, exited several minutes later, and handed the CI small objects. Id. The CI returned to the police vehicle and gave Galazka two orange-tinted Ziploc packets containing crack cocaine. N.T. 1/18/12, p. 42. The police later tested and weighed the narcotics at headquarters, and the drugs were determined to be cocaine. N.T. 1/18/12, p. 49, 129. The police then prepared a search warrant for 3093 Agate Street. N.T. 1/18/12, p. 49.

On August 8, 2008, the police continued their investigation by setting up surveillance of 3093 Agate Street. N.T. 1/18/12, p. 52. On this day, Galazka observed an unidentified man and woman walk on to the 3000 block of Agate Street. N.T. 1/18/12, p. 53. He then saw the appellant exit 3093 Agate and approach the unidentified man and woman. Id. Both the man and woman gave the appellant an unknown amount of money in exchange for small objects, but the police did not stop or apprehend these individuals. Id.

After observing this transaction, Galazka called a phone number that the CI had previously given to him, and he saw the appellant answer the phone. [4] N.T. 1/18/12, p. 38, 54. Galazka called the number because he believed that the appellant was using his phone to facilitate drug sales. Id. Galazka testified that following conversation occurred:

> I said, 'Yo Mont, it's Jeff. Can I get rock?' He [the appellant] said, 'Yeah,' and he gave me a brief description of what he was wearing, which I already knew, and then he said, 'Come onto the block.'

N.T. 1/18/12, p. 55. Based on Galazka's observations and conversation with the appellant, Officer Johnson arrested the appellant. N.T. 1/18/12, p. 56. Johnson recovered from the

---

[4] The officer called this cell phone number: 267-230-0827.

appellant's pants a clear plastic sandwich bag containing 42 orange-tinted Ziplock packets of crack cocaine, $129 dollars, a small bag of marijuana, and a cell phone. N.T. 1/18/12, p. 57, 131. According to Galazka, the retail value of the 42 packets of crack cocaine at $10 dollars a piece was $420 dollars. N.T. 1/18/12, p. 60. The crack packets recovered from the appellant was similar those that the CI purchased on August 5, 2012. Moreover, when Galazka called the appellant's cell phone again (after his arrest), it rang. N.T. 1/18/12, p. 62.

When the police later executed a warrant on 3093 Agate Street, they recovered four empty jars from a closet in the living room. N.T. 1/18/12, p. 51-52, 62. Galazka testified that he believed these jars were used to store marijuana and crack cocaine. Id. No drugs or money were recovered from the house. N.T. 1/18/12, p. 90. A chemist weighed the two Ziploc packets of crack cocaine purchased by the CI. N.T. 1/18/12, p. 129-130. These packets weighed 0.123 mg each. Id. He also opined that the 42 packets of crack cocaine recovered from the appellant weighed between 90 milligrams and 180 milligrams each. N.T. 1/18/12, p. 130. According to the chemist, the total weight of the 46 packets of crack cocaine was approximately 4.752 grams and the total weight of the marijuana was 1.88 grams.[5] N.T. 1/18/12, p. 131. Moreover, the appellant admitted that he "had crack cocaine in my [his] pocket" when he was arrested. N.T. 1/18/12, p. 143, 148. The appellant also conceded that the 42 packets of crack cocaine (at $10 dollar each) had a total value of $420 dollars. N.T. 1/18/12, p. 148.

---

[5] The reference to the 46 packets of crack cocaine includes the 42 recovered from the appellant and the two packets purchased by the CI.

# DISCUSSION

**1. The verdict was sufficient as a matter of law as to the charge of Criminal Use of a Communication Facility.**

In reviewing a challenge to the sufficiency of the evidence, the appellate court "must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to… the verdict winner." Commonwealth v. Conaway, 791 A.2d 359, 362 (Pa. Super. 2002) (citing Commonwealth v. Simpson, 754 A.2d 1264, 1269 (Pa. Super 2000)). The appellate court then determines whether the fact finder could have found that "every element of the offenses was proven beyond a reasonable doubt." Id. It is not necessary for the established facts to be "absolutely incompatible with the defendant's innocence." Id. (quoting Commonwealth v. Aguado, 760 A.2d 1181, 1185 (Pa. Super. 2000)). Rather, the question as to whether there is any doubt must be determined by the fact finder, unless the "evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Id.

In this appeal, the appellant argues that there is insufficient evidence to charge him with Criminal Use of a Communication Facility. This court disagrees. To support a conviction of Criminal Use of a Communication Facility, the record must show that: (1) the defendant knowingly and intentionally used a communication facility; (2) the defendant knowing, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony either occurred or was attempted. Commonwealth v. Moss, 852 A.2d 374, 382 (Pa. Super 2004). Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony." United States v. Davis, 929 F.2d 554, 559 (10th Circ.1991). Moreover, the charge of Criminal Use of a Communication Facility also includes

5

one's attempt to commit an underlying felony through his use of a communications facility.[6] It is also well settled that a conviction for this crime cannot stand without proof beyond a reasonable doubt that the underlying felony did in fact occur. United States v. Iennaco, 893 F.2d 394, 396 (D.C.Circ.1990).

In the case at bar, there is sufficient evidence in the record establishing the first element of Criminal Use of a Communication Facility. The evidence established that the appellant knowingly and intentionally used a communication facility (a cell phone) to discuss selling narcotics. The evidence also showed that the appellant engaged in a drug-related telephone conversation with Officer Galazka. N.T. 1/18/12, p. 38, 54. Galazka called the appellant, watched the appellant answer his phone, and then asked the appellant if he could buy crack cocaine. N.T. 1/18/12, p. 54-55. The appellant described what he was wearing and agreed to meet Galazka on the 3000 block of Agate Street. Id.

The evidence further established the second element of this offense. Criminal Use of a Communication Facility requires a person to knowingly, intentionally, or recklessly facilitate an underlying felony. The second element was met because the appellant knowingly and intentionally used a cell phone to assist him in selling narcotics. Without question, the appellant's drug-related telephone conversation with Galazka facilitated his attempt to commit the underlying felony of Possession with Intent to Deliver (PWID).

The third element of Criminal Use of a Communication Facility was also established. The third element requires that the underlying felony either occurred or was attempted. In this case,

---

[6] The law of attempt states that attempt requires a substantial step toward the commission of the specific underlying crime. 18 Pa.C.S.A §901(a). The substantial step factor puts emphasis on "what the defendant has done" and not on "the acts remaining to be done before the actual commission of the crime. Commonwealth v. Zingarelli, 839 A.2d 1064, 1069 (Pa.Super.2003).

each of the appellant's actions were substantial steps toward his attempt to commit PWID. For one thing, the appellant discussed selling drugs to Galazka on the phone. N.T. 1/18/12, p. 55. We also know that the appellant actually possessed and delivered drugs because Galazka had seen him conduct two separate drug transactions earlier with the CI and two buyers. N.T. 1/18/12, p. 41, 53. Lastly, when the appellant was arrested, Officer Johnson recovered 42 orange-tinted Ziplock packets of crack cocaine, $129 dollars, a small bag of marijuana, and a cell phone from his pants. N.T. 1/18/12, p. 57, 131. With all of this evidence, the jury could infer that the appellant committed the crime of Criminal Use of a Communication Facility.

2. **The verdict was sufficient as a matter of law as to the charge of Possession With Intent to Deliver**

The appellant next argues that there was insufficient evidence to convict him of PWID. This court disagrees. In order to establish PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver the same. Conaway, 791 A.2d 359, 362 (2002).

The Commonwealth can establish **possession** of a controlled substance through either actual possession or constructive possession. Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983). Actual possession is proven "by showing ... [that the] controlled substance [was] found on the [defendant's] person." Id. If the contraband were not found on the defendant, the Commonwealth may satisfy its evidentiary burden by proving that the defendant constructively possessed the drug. Id. Constructive possession is defined as one's ability to exercise a conscious dominion over the controlled substance, coupled with his intent to exercise that control. Commonwealth v. Chenet, 373 A.2d 1107, 1108 (Pa. Super. 1977). It is well settled that the Commonwealth may use circumstantial evidence to demonstrate a defendant's constructive

7

possession of a controlled substance. Macolino, 469 A.2d at 135-136 (citing Commonwealth v. Bentley, 419 A.2d 85, 87 (Pa. Super. 1980)).

The Commonwealth can also establish **intent to deliver** by direct evidence or it can be inferred from the totality of the circumstances. Conaway, 791 A.2d at 362-363. Some of the factors courts have considered when determining intent to deliver are the method of packaging, the form of the drug, and the behavior of the defendant. Id.

In the case at bar, the Commonwealth presented sufficient evidence to sustain the appellant's PWID conviction. The Commonwealth established the first element of PWID (actual possession) by showing that the appellant had 42 packets of crack cocaine in his pocket. N.T. 1/18/12, p. 57, 59. Furthermore, the appellant himself testified that he purchased the 42 packets for a total of $420 dollars. N.T. 1/18/12, p. 148. The appellant's admission, along with the drugs the police seized from him, is sufficient to establish the first element of PWID.[7]

The Commonwealth also established the second element of the PWID through the testimony of Officer Galazka. Galazka testified that he used a CI to assist him in his investigation of the appellant. N.T. 1/18/12, p. 38. He observed the appellant conduct two separate drug transactions. N.T. 1/18/12, p. 41, 53. During the first transaction, the CI approached the appellant, and they briefly conversed. N.T. 1/18/12, p. 41.The CI then gave prerecorded buy money to the appellant who, in turn, gave the CI two orange-tinted Ziploc packets of crack cocaine. Id.

During the second transaction, Galazka observed an unidentified man and woman walk on to the 3000 block of Agate Street. N.T. 1/18/12, p. 53. Shortly thereafter, the appellant exited

---

[7] Although the appellant does not contest his K+I conviction, it should be noted that the Commonwealth also presented sufficient evidence to sustain the K+I conviction.

3093 Agate and approached the unidentified man and woman. Id. At that point, they both handed the appellant an unknown amount of money in exchange for small objects.

After Galazka observed these transactions, he used a phone to call the cell phone number the CI had previously given to him. N.T. 1/18/12, p. 38, 54. Galazka testified that **the phone number belonged to the appellant** and that he **saw the appellant answer the phone and respond to his inquiry about purchasing crack cocaine.** N.T. 1/18/12, p. 38. According to Galazka, he and the appellant had the following conversation:

> 'Yo Mont, it's Jeff. Can I get rock?' He [the appellant] said 'Yeah,' and he gave me a brief description of what he was wearing, which I already knew, and then he said, 'Come onto the block.'

Id. This conversation confirmed that the appellant was using the phone to facilitate his narcotics sales.

In addition, when the appellant was later arrested, Officer Johnson recovered 42 orange-tinted Ziplock packets of crack cocaine, $129 dollars, a small bag of marijuana, and a cell phone from the appellant's pants. N.T. 1/18/12, p. 57, 131. During trial, the appellant testified that he did not intend to sell the crack cocaine, but rather the drugs were for personal use. N.T. 1/18/12, p. 148. However, the jury apparently did not find the appellant's testimony in this regard to be credible. Moreover, the evidence suggests that the appellant intended to sell the 42 packets of crack cocaine he was carrying in his pants pocket. The crack the appellant possessed corroborated his intent to sell. Although the appellant testified that he was going to mix the crack cocaine and the marijuana together to put into a "blunt" to smoke, the police never recovered any "blunts" or other drug paraphernalia from the appellant. N.T. 1/18/12, p. 147-151. Just as importantly, when the police executed their search warrant on 3093 Agate Street, they recovered four empty jars from a closet in the living room. N.T. 1/18/12, p. 62. Galazka testified that he

9

believed these jars were used to store marijuana and crack cocaine. Id. Based on the totality of the evidence, the Commonwealth established that the appellant possessed drugs with the intent to deliver.

The appellant also claims that "the weight of the drugs was suspect." He contends that "initially [the weight of the drugs] was 2.4 grams and then three months later it was 4.6 grams." This court is unsure how the appellant now calculates 4.6 grams when **both attorneys stipulated during the trial that the total weight of the cocaine was 4.752 grams**. N.T. 1/18/12, p. 128-131. This stipulation was binding on both parties as well as the court, as "facts effectively stipulated are controlling and conclusive." Tyson v. Commonwealth, 684 A.2d 246, 251 n.11 (Pa.Cmwlth.1996). It is also clear that "a stipulation is a declaration that the fact agreed upon is proven [, and a] valid stipulation must be enforced according to its terms." Commonwealth v. Rizzuto, 777 A.2d 1069, 1088 (2001). The appellate courts have held that "where the stipulation [is] clear and unambiguous on its face, we are prohibited from examining evidence, as to the intent of the parties, which is not within the four corners of the stipulation." Cobbs v. Allied Chemical Corp., 661 A.2d 1375, 1378 n.5 (1995). Therefore, the parties' stipulation also helped to establish PWID beyond a reasonable doubt. Com. v. Fennell, 105 A.3d 13, 20 (Pa. Super. 2014).

In our case, the court instructed the jury that the weight of the cocaine was agreed upon by both attorneys. The court instructed:

> "when the Assistant District Attorney and counsel for the defense stipulate, that is, when they agree that a certain fact is true, their stipulation is evidence of that fact and, you should regard the stipulated or agreed fact as proven."

N.T. 1/18/12, p. 28. The court further instructed the jury that the parties stipulated that the total weight of the cocaine was 4.752 grams. N.T. 1/18/12, p. 130. As the weight of the crack cocaine

was not in dispute, the appellant cannot now claim that he was treated unfairly when he himself stipulated to the weight of the drugs.

### 3. The court did not err by not revealing the identity of the confidential informant.

The appellant's final contention is that the court erred by not revealing the identity of the confidential informant (CI). This court disagrees. Before CI's identity may be revealed, the defendant must establish that the information sought is material to the preparation of the defense and that the request is reasonable. Commonwealth v. Roebuck, 681 A.2d 1279, 1283 (Pa. 1996), Commonwealth v. Bing, 713 A.2d 56, 58 (1998). "Only after a showing [t]hat the information sought is material and the request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed" Id. In deciding whether the CI's identity should be disclosed, the court considers such factors as the crime charged, the possible defenses, and the significance of the informer's testimony. Id. at 58. However, the Pennsylvania Supreme Court has also recognized the importance of the Commonwealth's privilege of non-disclosure "in order to preserve the public's interest in effective law enforcement." Id., Commonwealth v. Carter, 233 A.2d 284, 287, Commonwealth v. Herron, 380 A.2d 1228, 1229 (1977).

In the current case, there were numerous reasons why the court did not reveal the identification of the CI. First, the CI's identity was not material to the preparation of his defense. When asked, the appellant could not demonstrate how the court's revealing the CI's identity would help prove he was not selling narcotics. Second, the Commonwealth established that Officer Galazka independently observed the appellant sell narcotics to the CI on August 5, 2008. N.T. 1/18/12, p. 41. Third, Galazka gave the CI $20 dollars in pre-recorded buy money before observing the CI give the money to the appellant. Id. Fourth, the CI immediately gave Galazka

11

two orange-tinted Ziploc packets containing crack cocaine after the CI's transaction with the appellant. N.T. 1/18/12, p. 42, 129. Fifth, on August 8, 2008, Galazka later saw a man and woman exchange money for small objects with the appellant. N.T. 1/18/12, p. 53. Sixth, the appellant agreed to meet Galazka during their cell phone conversation. N.T. 1/18/12, p. 55. For all of these reasons, it was not necessary to reveal the CI's identity.[8]

Even if these reasons were not enough, the Commonwealth had a qualified non-disclosure privilege. This privilege was established to preserve the public's interest in effective law enforcement. Bing, 713 A.2d at 58, Carter, 233 A.2d at 287, Herron, 380 A.2d at 1229. In our case, Galazka testified that the CI had been used between 50- 100 times and that the CI was currently being used in other investigations. N.T. 1/18/12, p. 37. Consequently, revealing the CI's identity would have put the CI's safety at risk as well as compromise future investigations. N.T. 1/18/12, p. 37. Moreover, the appellant did not provide the court with an exception justifying why the Commonwealth's privilege should be breached. This was yet another reason why the court did not disclose the CI's identity.

---

[8] All of the police collaboration in this case rendered the CI's identity and testimony less significant.

# CONCLUSION

For the aforementioned reasons, this court respectfully submits that the appellant's claims should be denied.

By the Court,

Glynnis D. Hill, Judge

13