# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 15, 2018                    Decided December 11, 2018

No. 17-3052

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES DURRETTE, ALSO KNOWN AS JAY DURRETTE,
ALSO KNOWN AS GRAY BRIGGS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00052-3)

---

*Thomas G. Corcoran Jr.*, appointed by the court, argued the cause for the appellant. *Edward C. Sussman*, was with him on brief. *A.J. Kramer*, Federal Public Defender, entered an appearance.

*Kristina L. Ament*, Assistant United States Attorney, argued the cause for the appellee. *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Kenneth F. Whitted* and *James A. Ewing*, Assistant United States Attorneys, were on brief.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Following a seven-day trial, a jury convicted James Durrette of conspiracy to distribute, and conspiracy to possess with the intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin. Durrette filed a post-trial motion for judgment of acquittal, arguing in part that the evidence produced at trial was insufficient to establish that he was responsible for 100 grams or more of heroin. The district court denied the motion. Durrette appeals his conviction and we affirm.

Three times between April and June 2014, Durrette sold heroin to a government informant named Jonathan Weeks. On April 18, the FBI gave Weeks $6,000 to purchase 60 grams of heroin from Durrette. Weeks arranged for Durrette to dilute the drugs, paid Durrette a discounted price of $4,500 and pocketed the remaining $1,500. On April 29, Weeks and Durrette performed a similar maneuver: instead of paying Durrette $10,000 for 100 grams of heroin, Weeks paid him $8,000 for a diluted mixture and kept $2,000. The mixtures Weeks purchased in the two sales weighed 59.1 and 95.8 grams, respectively. At trial, however, the government presented no evidence regarding Durrette's unknown source for these two heroin sales.

The next sale involved a larger cast of characters. In late May 2014, Ricardo Lawson, a local drug dealer and an associate of Durrette, stole a kilogram of heroin from his suppliers. Lawson gave Durrette a portion of the kilogram to store at Durrette's car wash. At trial, Lawson first testified, "I think I took off like a hundred grams or something from [the kilogram]" to give Durrette. The prosecutor subsequently confirmed, "[A]t some point you took off a hundred kilograms

[sic] of that 1,000 kilograms [sic], correct?" Lawson responded, "Yes." Later, when asked again how much of the kilogram he gave Durrette, Lawson testified, "A hundred grams."

On June 2, Weeks, still acting as a government informant, contacted Lawson in order to purchase 100 grams of heroin for $10,000. Weeks arranged for Lawson to dilute the heroin, this time by half, so that Weeks could keep $5,000. Lawson retrieved from Durrette 50 of the 100 grams of heroin Lawson had left at Durrette's car wash. Lawson and Durrette together then sold the heroin to Weeks. During the exchange, Lawson provided Weeks with two separate bags, one containing the 50 grams of heroin and one containing approximately 50 grams of "cut."[1] Weeks combined the two substances to create a mixture weighing 89.1 grams.

A grand jury indicted Durrette, Lawson's suppliers and others, on one count of conspiracy to distribute heroin, cocaine and marijuana and one count of conspiracy to commit robbery. As relevant here, the indictment charged Durrette with conspiracy to distribute, and conspiracy to possess with the intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 840(a)(1) and (b)(1)(B)(i). At the close of the prosecution's case, Durrette moved for judgment of acquittal on the heroin charge on the ground that the government had not presented sufficient evidence to establish that Durrette was responsible for at least 100 grams of heroin. The district court denied the motion and submitted the case to the jury. The jury

---

[1] "Cut" refers to a substance used to dilute a drug and increase its volume. The record does not identify the particular "cut" Lawson had at the exchange or where he obtained it.

convicted Durrette on the heroin charge but acquitted him on the cocaine, marijuana and robbery charges.

Following the verdict, Durrette renewed his motion for judgment of acquittal. He argued in part that there was insufficient evidence to establish that he was part of the Lawson conspiracy[2] or that the amount of heroin attributable to him equaled or exceeded 100 grams. The district court again denied the motion. Although the court found that the two April transactions were not part of the Lawson conspiracy due to the lack of evidence connecting those two transactions to the other Lawson co-conspirators, it concluded that the June sale involving Lawson was part of the conspiracy and supported Durrette's conviction. The court then determined that the June sale involved 100 grams or more of heroin. First, the court reasoned that the jury could have taken the 89.1 grams of heroin/cut mixture sold to Weeks together with the 50 grams left at Durrette's car wash to reach a total drug weight well exceeding 100 grams. Second, the court concluded that the jury could have simply attributed the entire stolen kilogram of heroin to Durrette. The district court then imposed a 120-month sentence to be followed by ninety-six months of supervised release. Durrette appeals his conviction, insisting that the evidence at trial was insufficient to prove that he was responsible for 100 grams or more of heroin.[3]

---

[2] As alleged in the indictment, the Lawson conspiracy comprised Lawson's suppliers, Durrette, two individuals who worked with Lawson and one individual who worked with Durrette.

[3] Durrette originally appealed the district court's determination that the June sale was part of the Lawson conspiracy alleged in the indictment. Durrette withdrew the challenge in his reply brief.

The 100-gram threshold of a heroin conviction under 21 U.S.C. § 841(b)(1)(B)(i) triggers a five-year mandatory minimum for all defendants and a ten-year mandatory minimum if a defendant has a prior drug felony, as Durrette did. "Facts that increase the mandatory minimum sentence are [] elements and must be submitted to the jury and found beyond a reasonable doubt." *United States v. Stoddard*, 892 F.3d 1203, 1219 (D.C. Cir. 2018) (alteration in original) (quoting *Alleyne v. United States*, 570 U.S. 99, 108 (2013) (plurality opinion)). Whether Durrette is responsible for 100 grams or more of heroin, therefore, constitutes an element of his offense of conviction. "When reviewing a guilty verdict for sufficiency of the evidence, we view the evidence in the light most favorable to the Government and must affirm the verdict if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Stadd*, 636 F.3d 630, 636 (D.C. Cir. 2011) (quoting *United States v. Wynn*, 61 F.3d 921, 923 (D.C. Cir. 1995)).

On appeal, Durrette challenges both rationales relied upon by the district court to sustain the jury's finding that he was responsible for 100 grams or more of heroin. We need not resolve Durrette's challenges to the district court's alternative rationales because a third rationale supports the jury verdict.[4]

---

[4] We agree with Durrette that the district court's first rationale appears to rest on a faulty premise. The district court reasoned that the jury could have taken the 89.1 gram mixture from the June sale together with the 50 grams left at Durrette's car wash to reach a heroin quantity in excess of 100 grams. But the testimony presented at trial conclusively established that Weeks, not Lawson, mixed the heroin with the cutting agent to produce the final mixture. As a government informant, Weeks was not a co-conspirator and his actions are not attributable to the conspiracy. *See United States v. Iennaco*, 893 F.2d 394, 397 n.3 (D.C. Cir. 1990). Consequently,

Namely, Lawson repeatedly testified that he took 100 grams of heroin from the stolen kilogram and gave it to Durrette. When asked what he did with the stolen kilogram, Lawson stated, "I think I took off like a hundred grams or something from it" and gave it to Durrette. Lawson confirmed that he "took off a hundred kilograms [sic] of that 1,000 kilograms [sic]." And, once again, Lawson repeated that he took off "[a] hundred grams."

Durrette argues that Lawson's first statement was merely an estimate because he used qualifying language, including "I think," "like" and "or something." As the government noted at oral argument, however, these hedging terms could have been simply verbal tics Lawson used in the same way others use the fillers "um" or "you know" when speaking. Regardless whether Lawson's use of these terms qualified his initial statement, he subsequently confirmed *twice*, without hedging, that he gave Durrette 100 grams of the stolen kilogram. Taking these three statements together and "in the light most favorable to the Government," *id.*, we believe that the jury could have reasonably concluded that when Lawson said he gave Durrette 100 grams, Lawson in fact gave Durrette 100 grams. Because a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we cannot disturb the verdict. *Id.* (quoting *Wynn*, 61 F.3d at 923).

---

only the 50 grams of heroin taken from Durrette's car wash, not the 89.1 grams of heroin/cut mixture Weeks created at the June sale, is fully attributable to Durrette and the conspiracy. We need not reach the district court's alternative rationale (the jury could have attributed the entire stolen kilogram of heroin to Durrette) as Lawson testified that he gave Durrette the 100 grams necessary to sustain the latter's conviction.

For the foregoing reasons, the judgment is affirmed.

*So ordered.*